[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-11667

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
Sept. 30, 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 06-00365-CV-3-RV-EMT

RANDY CAMPBELL,

Plaintiff-Appellant,

versus

R. JOHNSON,
Sheriff,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(September 30, 2009)

Before BIRCH and KRAVITCH, Circuit Judges, and HODGES,* District Judge.

---

*Honorable Wm. Terrell Hodges, United States District Judge for the Middle District of Florida, sitting by designation.

PER CURIAM:

This case stems from the Walton County Jail's alleged refusal to release appellant Randy Campbell on bail after the court approved a property bond. Campbell sued appellee Ralph L. Johnson, Sheriff of Walton County, Florida, under 42 U.S.C. § 1983, claiming a violation of his Fifth and Fourteenth Amendment due process liberty rights and his Eighth Amendment right to be free from excessive bail. At issue is whether the district court correctly granted summary judgment in favor of Sheriff Johnson on Campbell's constitutional claims. After careful consideration of the parties' briefs and oral argument, we REVERSE and REMAND for further proceedings.

## I. BACKGROUND

The facts, viewed in the light most favorable to Campbell, are as follows. In May 2004, Campbell was arrested for a felony charge of driving under the influence ("DUI") and booked into the Walton County Jail ("Jail"). Bond was initially set for $30,000 and subsequently reduced to $25,000, payable in cash, a professional bond, or a property bond "upon Judge's approval." R1-29, Walton County Circuit Court Case Disposition, 29 June 2004. In August 2004, the Okaloosa County Sheriff's Office placed a hold on Campbell pursuant to an

2

outstanding arrest warrant. This hold meant that Campbell would be released to the Okaloosa County Jail if he posted bond.

Sometime in December 2004, Walton County Circuit Judge Kelvin C. Wells approved real estate documents presented by Campbell's mother and sister as security for Campbell's property bond. The approved property was located in Okaloosa County, Florida. Judge Wells accompanied Campbell's mother and sister to the Jail and personally informed the booking officer that he had approved the property as security for Campbell's bond. The booking officer responded that the documents needed proof that the property was not homestead. Judge Wells directed the officer to accept the documents once the property had been verified as non-homestead. Campbell's mother and niece returned to the Jail sometime in February 2005 with the verified documents. Nevertheless, the Jail administrator stated that Sheriff Johnson had directed the Jail not to accept the real estate documents as security for Campbell's bail. Campbell therefore remained incarcerated.

On 13 April 2005, Campbell filed an inmate grievance detailing the Jail's refusal to release him despite Judge Wells' approval of the property bond. In response, a Jail officer suggested that Campbell file a motion for bond verification in the hopes of persuading the court to approve a property bond.

On 21 April 2005, Campbell's attorney requested the court to accept the Okaloosa property documents as security for Campbell's bond. The court noted that it had already approved the property documents but it was up to the Sheriff's Department to process the bond. Further, the court stated that the Jail administration had informed the court that Sheriff Johnson had directed the Jail not to accept property located outside of Walton County in satisfaction of a property bond. That same day, Lieutenant Toby Prater and Officer Gary Hubbard told Campbell that, per Sheriff Johnson, "'it was not going to release [Campbell] on property bond, using property located in Okaloosa County, Florida, because if [Campbell] failed to appear it would have to hire an attorney to take the property, and it was not about to do that.'" R1-37, Exh. F, Campbell Affidavit at 3.

On 23 April 2005, Campbell wrote a letter to the Walton County Commission notifying it that Sheriff Johnson had refused to process his court-approved property bond. The letter states that copies were sent to Sheriff Johnson, the Walton County Clerk, Judge Wells, and the Walton County Jail.

On 11 May 2005, Sheriff Johnson sent a brief memorandum to Sergeant Hall, a corrections officer at the Jail, advising him "to accept the property bond on, Randy Campbell, which was presented by his mother per agreement by Judge Wells." R1-29, 11 May 2005 Memo. Campbell's mother returned the next

4

morning to bond him out, but Campbell had already been adjudged guilty of the DUI charges.[1] The court sentenced him on 17 May 2005 to seventy-eight months of imprisonment, with credit for time served. Campbell was released the next day to the custody of the Okaloosa County Sheriff's Office but returned to the Walton County Jail two days later. He entered the custody of the Florida Department of Corrections in June 2005.

Campbell then filed this § 1983 action pro se against Sheriff Johnson in his individual and official capacity. In his second amended complaint, Campbell alleged that Sheriff Johnson's refusal to accept his court-approved property bond resulted in Campbell's excessive detention and deprived him of due process under the Fifth and Fourteenth Amendments. Additionally, Campbell claimed that Sheriff Johnson violated Campbell's Eighth Amendment right to be free from excessive bail. The magistrate judge directed Sheriff Johnson to file a special report in lieu of an answer, raising all possible defenses, which the magistrate judge advised may be later deemed a motion for summary judgment. In his special report, Sheriff Johnson argued that summary judgment was warranted because there was no evidence that he was personally involved in the action giving rise to

---

[1] According to the Clerk's minutes, Campbell pled guilty on 12 May 2005. The case disposition sheet, however, reflects that Campbell entered his guilty plea on 9 May 2005. This discrepancy in dates does not alter our legal conclusions.

5

the § 1983 action and there was no causal connection between his actions and the alleged constitutional violations. Sheriff Johnson did not raise a claim of qualified immunity.

The magistrate judge recommended that summary judgment be granted in favor of Sheriff Johnson on his constitutional claims and that any state-law claims be dismissed without prejudice. With respect to Campbell's due process claim of false imprisonment, the magistrate judge found "no evidence that Sheriff Johnson was personally involved in the alleged due process violation, or that there was a sufficient causal connection between his policies, actions, or omissions to support a basis for liability." R1-49 at 14. Accordingly, the magistrate judge concluded that Sheriff Johnson was not liable under § 1983 for the alleged due process violation. As for Campbell's Eighth Amendment claim of excessive bail, the magistrate judge concluded that Sheriff Johnson's policy of requiring property to be located within Walton County was supported by the county's "valid interest in ensuring that bail bonds were sufficiently secured and that the cost of a forced sale would not exceed the value of the property." Id. at 16. Further, the magistrate judge found that the requirement was not greater than necessary and therefore did not violate the Eighth Amendment.

6

The district court adopted the magistrate judge's report and recommendation. The court entered judgment against Campbell and subsequently denied Campbell's motion to alter or amend that judgment.

Following the submission of appeal briefs by both parties, we appointed counsel to represent Campbell. Campbell's attorneys submitted an additional brief and orally argued the case before us. On appeal, Campbell no longer challenges Sheriff Johnson in his official capacity under a theory of municipal liability. He instead argues that Sheriff Johnson is individually liable in his supervisory capacity for violating Campbell's Fourteenth Amendment due process rights and his Eighth Amendment right to be free from excessive bail.

## II. DISCUSSION

We review de novo the district court's grant of summary judgment. Rioux v. City of Atlanta, Ga., 520 F.3d 1269, 1274 (11th Cir. 2008). When "'no genuine issue as to any material fact'" remains, the moving party is entitled to a judgment as a matter of law. See id. (quoting Fed. R. Civ. P. 56(c)). As the non-moving party, Campbell is entitled to have all evidence and reasonable factual inferences viewed in his favor. See id. Similarly, we must resolve any reasonable doubts about the facts in Campbell's favor. See id.

A. Fourteenth Amendment Due Process Violation

Campbell alleges that Sheriff Johnson falsely imprisoned him by instructing the Jail not to accept Campbell's bail, in violation of his Fourteenth Amendment due process rights.[2] Campbell further contends that the district court erroneously concluded that Sheriff Johnson was not liable in his supervisory capacity.

A § 1983 claim of false imprisonment requires a showing of common law false imprisonment and a due process violation under the Fourteenth Amendment. See Cannon v. Macon County, 1 F.3d 1558, 1562-63 (11th Cir. 1993), modified on other grounds, 15 F.3d 1022 (1994). The elements of common law false imprisonment are an intent to confine, an act resulting in confinement, and the victim's awareness of confinement. See id. at 1562 n.3. The Fourteenth Amendment Due Process Clause includes the "right to be free from continued detention after it was or should have been known that the detainee was entitled to release." Id. at 1563; West v. Tillman, 496 F.3d 1321, 1327 (11th Cir. 2007) (per curiam). To establish a due process violation, Campbell must prove that Sheriff Johnson acted with deliberate indifference. See Tillman, 496 F.3d at 1327. This means that Sheriff Johnson had subjective knowledge of a risk of serious harm and disregarded that risk by actions beyond mere negligence. See id.

_____

[2] Campbell also argues on appeal that Sheriff Johnson failed to give him proper notice and an opportunity to be heard. These claims were not addressed by the district court in its order granting summary judgment. Given our decision to reverse the grant of summary judgment and remand the case, we do not decide whether these claims were timely raised in the district court.

As a supervisory official, Sheriff Johnson is only liable under § 1983 for the unconstitutional acts of his subordinates if he personally participated in the allegedly unconstitutional conduct, or his actions were causally connected to the alleged constitutional deprivation. See id. at 1328. A causal connection may be shown by evidence of (1) "a custom or policy that results in deliberate indifference to constitutional rights," (2) "facts that support an inference that the supervisor[ ] directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so," or (3) "a history of widespread abuse" that notified the supervisor of the need to correct the alleged deprivation, but he failed to do so. Id. at 1328-29 (quotation marks, citation, and brackets omitted).

The record here reveals a genuine issue of material fact as to whether Sheriff Johnson personally participated in Campbell's alleged false imprisonment. First, the parties dispute whether Sheriff Johnson directed the Jail not to accept the Okaloosa property in satisfaction of Campbell's bail bond. According to the affidavits of Campbell's mother and niece, Sheriff Johnson did just that.[3] Campbell's mother stated that the Jail administrator "advised that on directions of Sheriff R. Johnson it was not allowed to accept the real estate document in lieu of

_____

[3] Sheriff Johnson does not dispute the district court's consideration of this evidence at the summary judgment stage.

9

Randy's bail bond, and refused to facilitate his release." R1-37, Appx. A, Harriet Crowder Affidavit at 2. Similarly, Campbell's niece stated that "the [Jail] Administration said that they had been directed by Sheriff not to accept the real estate documents in lieu of my uncle's bail bond, and refused to release him." R1-37, Appx. A, Kimberly Griffin Affidavit at 2. The reason for the Sheriff's actions, as explained by Lieutenant Prater and Officer Hubbard to Campbell, was that Sheriff Johnson did not want to hire an attorney to force a sale of the Okaloosa property should Campbell fail to appear.

In direct contrast to this evidence, Sheriff Johnson denies in his affidavits any personal knowledge of Campbell. He further denies any personal knowledge that any employee of the Walton County Sheriff's Office refused to accept a property bond approved by Judge Wells for Campbell's release. The only action Sheriff Johnson acknowledges taking with respect to Campbell is sending the 11 May 2005 memo advising Sergeant Hall to accept Campbell's court-approved property bond. This dispute in the evidence as to what actions Sheriff Johnson performed creates a genuine issue of material fact concerning his involvement in the putative due process violation.

Second, the parties dispute whether Sheriff Johnson knew that the Okaloosa property had been judicially approved prior to 11 May 2005. Sheriff Johnson does

10

not recall how the May 11th memo was created. He states that his practice and policy is for the Jail to release an inmate pursuant to any court-approved property bond. Consequently, Sheriff Johnson asserts that he would have notified the Jail upon learning that a property bond had been judicially approved for an inmate. Moreover, Sheriff Johnson acknowledges that he has no authority with respect to the amount or type of bond that is ordered or approved for an inmate. He insists that he does not interfere with judicial decisions regarding bond for Jail inmates.

The record contains evidence, however, from which a reasonable factfinder could find that Sheriff Johnson did know prior to his May 11th memo that Judge Wells had approved the property bond. Judge Wells personally informed the Jail booking officer in December 2004 that he approved of the Okaloosa property once it was verified to be non-homestead property; yet the Jail told Campbell's mother and niece in February 2005 that Sheriff Johnson would not accept that property even after it had been verified. Given Sheriff Johnson's purported policy that the Jail should release inmates on court-approved property bonds, it is reasonable to infer that the Jail would follow this policy by informing Sheriff Johnson about Judge Wells' approval of the property bond before the Sheriff made any decision about Campbell's bond. Additionally, the record reflects that Campbell sent a copy to Sheriff Johnson of the letter he wrote to the Walton County

11

Commissioners on 23 April 2005, wherein Campbell described the court-approved nature of the Okaloosa property. Not only does Sheriff Johnson not deny receiving this letter, but he conceded at oral argument that the letter is one way that he might have learned of Campbell's situation. Consequently, what Sheriff Johnson knew, and when he knew it, are unresolved issues of material fact.

Viewing the evidence in the light most favorable to Campbell, and drawing all reasonable inferences from that evidence in his favor, we conclude that there are genuine issues of material fact regarding whether Sheriff Johnson personally participated in the alleged due process violation. Accordingly, the district court erred in determining that there was an insufficient basis to support Sheriff Johnson's § 1983 liability as to Campbell's claim of false imprisonment.[4]

B. Eighth Amendment Excessive Bail Claim

Campbell also argues that his bail became excessive under the Eighth Amendment when Sheriff Johnson required that the property be located in Walton County despite Judge Wells' approval of the Okaloosa County property. Campbell submits the district court erred in determining that the Sheriff's requirement was

---

[4] Based on our conclusion, we do not address whether Sheriff Johnson may also be found liable in his supervisory capacity based on a causal connection between his actions and the alleged constitutional violation.

necessary to achieve the county's valid interest in avoiding additional expenses to force a sale of out-of-county property.

"The Eighth Amendment to the Constitution, applicable to the States through the Due Process Clause of the Fourteenth Amendment, . . . provides that '[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.'" Baze v. Rees, ___ U.S. ___, ___, 128 S. Ct. 1520, 1529 (2008). Although the Excessive Bail Clause does not guarantee a right to bail, it does guarantee that any bail imposed "not be 'excessive' in light of the perceived evil." United States v. Salerno, 481 U.S. 739, 754, 107 S. Ct. 2095, 2105 (1987). To determine whether bail is excessive, we must compare the terms of the bail against the interest the government seeks to protect. See id. "Thus, when the Government has admitted that its only interest is in preventing flight, bail must be set by a court at a sum designed to ensure that goal, and no more." Id. However, "[n]othing in the text of the Bail Clause limits permissible Government considerations solely to questions of flight." Id. Although preventing flight may be the primary function of bail, the government is free to pursue "other admittedly compelling interests through regulation of pretrial release." Id. at 753, 107 S. Ct. at 2104. One such compelling interest identified in Salerno was protecting the public's safety. See id. at 754-55, 107 S. Ct. at 2105-06.

13

As an initial matter, we note that the Sheriff maintains he never instructed Jail employees not to release Campbell on his court-approved bond. As discussed earlier, whether the Sheriff is liable as a supervisor for his personal participation in the allegedly unconstitutional acts involves unresolved issues of material fact. The district court, however, did not address the question of supervisorial liability in this matter. Rather, the district court skipped to the issue of whether a constitutional violation had occurred. The district court found no Eighth Amendment violation because the Sheriff's alleged policy of requiring in-county property was not greater than necessary to achieve the county's valid interest in ensuring that bail bonds are sufficiently secured and that the cost of a forced sale does not exceed the value of the property.

We believe the district court employed an incorrect legal standard in assessing this claim. Under Salerno, the test for excessiveness is whether the terms of release are designed to ensure a compelling interest of the government, and no more. See id. at 753-54, 107 S. Ct. at 2104-05. Although the district court found that minimizing the enforcement costs of a property bond was a "valid" government interest, the district court did not determine whether this constituted a compelling interest for purposes of the Eighth Amendment Excessive Bail Clause. We apparently have never addressed this specific issue. In general, however, we

14

have emphasized that "[t]he purpose of bail is to secure the presence of the defendant, . . . its object is not to enrich the government or punish the defendant[.]" United States v. Rose, 791 F.2d 1477, 1480 (11th Cir. 1986) (quotation marks and citation omitted). Similarly, Florida law states that the purpose of bail is to ensure the defendant's appearance and protect the community's safety. See Fla. Stat. § 903.046(1). Given our precedent, it is questionable whether a county's pecuniary interests can rise to the level of a compelling interest.

In Broussard v. Parish of Orleans, 318 F.3d 644, 647-48, 651 (5th Cir. 2003), the Fifth Circuit noted that imposing nominal administrative fees ($15 and under) to cover the costs of the bail-bond system was clearly not a compelling interest previously recognized by the Supreme Court. Nevertheless, the court found that the fees imposed only a minor and largely theoretical restriction on a person's liberty interest because there was no evidence that the fees had ever prevented an arrestee from making bail. See Broussard, 318 F.3d at 651. Consequently, the court concluded that the fees did not constitute excessive bail. See id. at 651-52; see also Payton v. County of Carroll, 473 F.3d 845, 846-850 (7th Cir. 2007) (relying on Broussard to reject an Eighth Amendment excessive bail challenge to a $1 administrative fee for posting bond). In contrast, the Sheriff's alleged in-county property requirement here was neither a minor nor theoretical

15

restriction. Rather, it prevented Campbell's release from jail. Sheriff Johnson must articulate a compelling interest to justify that restriction. See Salerno, 481 U.S. at 753, 107 S. Ct. at 2104.

Furthermore, the district court's decision sidestepped the issue of whether Sheriff Johnson had the authority in the first instance to modify the conditions of Campbell's bail. The Salerno test presupposes that the terms of release are imposed by an individual with the legal authority to do so. See id. at 754, 107 S. Ct. at 2105 (noting that "bail must be set by a court at a sum designed to ensure" the government's goal). As the district court correctly recognized, Florida law grants the court having jurisdiction to try the defendant the sole authority to hear and decide issues regarding bail, including the conditions of bail. See Fla. Stat. § 903.03(1) ("[a]fter a person is held to answer by a trial court judge, the court . . . [has] jurisdiction to hear and decide all preliminary motions regarding bail"). The conditions of Campbell's bail permitted the use of property "upon Judge's approval", and there has been no showing that the Sheriff's alleged in-county requirement was subsequently approved by the court. Without such legal authority, we doubt whether the Salerno test even comes into play.

Finally, even if Sheriff Johnson had the authority to modify Campbell's bail and even if the in-county property requirement furthered a compelling interest,

16

there is little evidentiary basis for the district court's conclusion that the in-county property requirement was not excessive. The only additional expense cited by the Sheriff's employees was the cost of hiring an attorney to force an out-of-county property sale should Campbell fail to appear. Yet the record is silent as to the amount of legal fees that would be required, or whether those fees would exceed the value of the Okaloosa property. We thus find insufficient evidence to support the district court's conclusion that the in-county property requirement was no greater than necessary to achieve the county's stated interest.

Accordingly, the district court erred in granting summary judgment on this claim.

### III. CONCLUSION

Campbell appeals the district court's grant of summary judgment in favor of Sheriff Johnson on his § 1983 claims. We conclude that genuine issues of material fact exist as to whether Sheriff Johnson is liable in his supervisory capacity for the alleged constitutional violations. We also conclude that the district court erred in analyzing Campbell's Eighth Amendment claim of excessive bail. Consequently, we REVERSE the grant of summary judgment and REMAND for further proceedings.

**REVERSED and REMANDED.**

17