[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-13994
Non-Argument Calendar

_____

D.C. Docket No. 4:13-cv-00646-RH-GRJ

ANTONIO DOLL,

Plaintiff-Appellant,

versus

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,
WARDEN, JACKSON CORRECTIONAL INSTITUTION,
HEATH HOLLAND,
Assistant Warden, Jackson Correctional Institution,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(October 27, 2017)

Before TJOFLAT, WILLIAM PRYOR, and ROSENBAUM, Circuit Judges.

PER CURIAM:

Antonio Doll is a state prisoner incarcerated at the Jackson Correctional Institution ("Jackson C.I.") in Jackson County, Florida.  He brought this *pro se* 42 U.S.C. § 1983 civil-rights lawsuit alleging that he is being imprisoned unlawfully beyond the expiration of his state sentence.  He claims that the Secretary of the Florida Department of Corrections ("FDOC") and the Warden and Assistant Warden of Jackson C.I. violated and continue to violate his constitutional rights by neglecting to follow a state-court order that, in his view, reduced his prison sentence by fifteen years.  The district court dismissed his lawsuit under both the *Rooker-Feldman*[1] doctrine and the *Younger*[2] abstention doctrine.  Alternatively, the court found that Doll's claims failed on the merits because his interpretation of the order was contradicted by the record and Florida state law.  For the reasons that follow, we affirm.

## I.

Doll was convicted of first-degree burglary and third-degree aggravated assault in Florida state court in December 1992.[3]  According to a transcript of Doll's sentencing hearing, the sentencing judge designated Doll a habitual-violent--felony offender before sentencing him to thirty years in prison on the burglary count, with a fifteen-year minimum mandatory, and to a consecutive term of ten

---

[1] *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

[2] *Younger v. Harris*, 401 U.S. 37 (1971).

[3] The following factual summary is derived from documents attached to Doll's amended complaint and evidence submitted in support of FDOC's motion for summary judgment.

years in prison on the aggravated-assault count, with a three-year minimum mandatory. The written sentencing order, however, failed to reference the fifteen-year minimum mandatory or the habitual-violent-felony offender designation.[4]

On January 13, 1994, a state-court judge issued a *nunc pro tunc* order to correct Doll's sentence (the "*nunc pro tunc* order"). The *nunc pro tunc* order stated, "The defendant is sentenced as a violent habitual offender with fifteen (15) years of minimum mandatory imprisonment as to [the burglary count]."

In November 2011, Doll filed a petition for a writ of mandamus in Florida state court claiming a right to immediate release. In his view, the *nunc pro tunc* order replaced his original thirty-year sentence on the burglary count with a fifteen-year sentence that carried a fifteen-year minimum mandatory. And that fifteen-year sentence, he asserted, had expired.

The state court re-designated Doll's mandamus petition as a petition for writ of habeas corpus and asked for the FDOC's views. The FDOC responded that the *nunc pro tunc* order did not substantively change Doll's sentence. Rather, according to the FDOC, the order simply corrected the written sentencing order, which failed to reflect the legally controlling oral pronouncement of Doll's sentence.

---

[4] At the sentencing hearing, Doll also pled guilty to possession of a firearm by a convicted felon, receiving credit for time served. As a result of his conviction for that offense, he was subject to a mandatory minimum term of three years of imprisonment for the burglary and aggravated-assault convictions. That mandatory minimum was reflected in the sentencing order.

The state court agreed with the FDOC's position and denied Doll's habeas petition on August 20, 2012. Reviewing the transcript of sentencing, the court found that Doll had been orally sentenced on the burglary count to thirty years in prison with a minimum mandatory term of fifteen years as a habitual-violent-felony offender. And "[b]ecause the written sentencing order did not reflect the oral pronouncement," the court explained, "the [judge] properly corrected that order by adding, *nunc pro tunc* to December 4, 1992, a fifteen (15) year [habitual-violent-felony offender] mandatory minimum provision." The court found that the order did not, as Doll contended, reduce his sentence on the burglary count.

Doll continued to press his arguments in Florida state courts. On November 5, 2012, Doll's motion for rehearing was denied as both untimely and without merit. On January 11, 2013, the First District Court of Appeal *per curiam* denied Doll's petition for writ of certiorari. A couple weeks later, Doll filed a Motion for Relief from Judgment, which was denied on September 26, 2013. Doll then filed with the First District Court of Appeal a notice of appeal, a petition for writ of prohibition, and a petition for writ of certiorari. The First District denied or dismissed these matters between January and April 2014. Finally, Doll filed a mandamus petition in the Florida Supreme Court on May 29, 2014, which the Court dismissed for lack of jurisdiction on June 4, 2014.

**II.**

Doll filed this lawsuit in federal district court on November 22, 2013, and submitted an amended complaint on April 17, 2014.  In the operative amended complaint, Doll sought money damages ($1 million for each year of his allegedly unlawful incarceration) from three named defendants—Michael Crews, then-Secretary of the FDOC; John Barfield, Warden of Jackson, C.I.; and Heath Holland, Assistant Warden of Jackson, C.I.—claiming that they were individually liable for failing to execute the *nunc pro tunc* order correcting his sentence.  He maintained that the order should have led to his release in 2009.

Eventually, after some events not directly relevant to Doll's appeal, the defendants moved for summary judgment.  The defendants argued that Doll's case was barred by the *Rooker-Feldman* doctrine or, alternatively, that the court should abstain from exercising jurisdiction under the *Younger* abstention doctrine.  They maintained that Doll's case failed on its merits also.  Doll responded that the defendants' motion was untimely and that summary judgment was not appropriate.

The magistrate judge prepared a report and recommendation ("R&R") largely in agreement with the defendants' summary-judgment motion. The district court accepted the R&R over Doll's objections.  "As set out in the report and recommendation," the court stated, "the plaintiff's claims would fail on the merits,

5

even if they were not procedurally barred." The court dismissed Doll's case "with prejudice." Doll now brings this appeal.

## III.

On appeal, Doll first argues that the district court should have denied the defendants' summary-judgment motion as untimely. He correctly notes that the motion was untimely, by three days. The court did not extend the deadline but granted the motion anyway.[5]

We review the district court's decision to consider an untimely motion for summary judgment for an abuse of discretion. *Thomas v. Kroger Co.*, 24 F.3d 147, 149 (11th Cir. 1994). The district court may consider an untimely summary-judgment motion if, among other reasons, "doing so would be consistent with the interest of judicial economy." *Id.* (internal quotation marks omitted).

Here, the district court appropriately considered the defendants' untimely motion for summary judgment. Given the short delay and largely undisputed

---

[5] Doll contends that the court violated his due-process rights by extending the deadline for filing the summary-judgment motion through an internal order without giving him an opportunity to respond and object. But he appears to be mistaken about the significance of the internal order. When the prison officials filed their motion for summary judgment, an internal deadline appeared on the docket, indicating to the clerk that the motion should be referred to the magistrate judge on April 10, 2015, unless Doll filed his response before that date. Immediately thereafter, however, the magistrate judge issued a notice informing Doll of summary-judgment rules and procedures and extending his deadline to respond until April 22, 2015. As a result, the internal deadline for the motion to be referred to the magistrate judge was changed to April 22 rather than April 10. In other words, the internal orders referred to Doll's deadline for responding to the summary-judgment motion. They did not, as Doll seems to believe, extend the defendants' time to file the motion. Doll was not deprived of due process by being unable to object to an extension that benefitted him, and he timely responded to the defendants' motion.

factual history, the court's choice to resolve the motion clearly served the interest of judicial economy.  *See id.*

## IV.

Doll next challenges the district court's reasons for dismissing his complaint. As explained above, the district court dismissed the lawsuit for three reasons: the court found (1) the suit was barred by *Rooker-Feldman*; (2) abstention was appropriate under *Younger*; and (3) Doll's case failed on the merits.

## A.

We first consider the district court's application of the *Rooker-Feldman* doctrine, which implicates the court's subject-matter jurisdiction.   We are obligated to inquire into subject-matter jurisdiction *sua sponte* whenever it may be lacking.  *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999). We review *de novo* the application of the *Rooker-Feldman* doctrine.  *Lozman v. City of Riviera Beach, Fla.*, 713 F.3d 1066, 1069–70 (11th Cir. 2013).

"Generally speaking, the *Rooker-Feldman* doctrine bars federal district courts from reviewing state court decisions."  *Nicholson v. Shafe*, 558 F.3d 1266, 1270 (11th Cir. 2009).  The doctrine, according to the Supreme Court, is a narrow one confined to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced

and inviting district court review and rejection of those judgments." *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

For *Rooker-Feldman* to apply, the state-court proceedings must have ended before the federal action was commenced. *Lozman*, 713 F.3d at 1072; *see Nicholson*, 558 F.3d at 1275 (listing three tests for determining when state proceedings have ended). Here, the district court concluded that the state proceedings ended when the First District Court of Appeal and the Florida Supreme Court denied or dismissed Doll's various petitions and appeals stemming from the August 20, 2012, judgment. *See Nicholson*, 558 F.3d at 1275 (stating that state proceedings have not ended "when a state court loser seeks 'further action,' such as an appeal").

We have no reason to question the district court's determination of when state-court proceedings ended, but we find that that determination does not support the application of *Rooker-Feldman*. Doll's petitions and appeals were not resolved until 2014, after he filed his initial complaint in federal district court in November 2013. Because the state proceedings had not ended at the time Doll filed his initial complaint, *Rooker-Feldman* does not bar his lawsuit, even though the state proceedings ended while the case was before the district court. *See Lozman*, 713 F.3d at 1072 n.3 ("[T]he *Rooker-Feldman* analysis here depends on whether there is properly invoked jurisdiction at the time of Appellant's initial federal

8

complaint.").  We therefore conclude that the district court had jurisdiction to address Doll's complaint.

## B.

Next, we address the district court's decision to abstain.  Federal courts have a virtually unflagging obligation to exercise their jurisdiction.  *Sprint Commc'ns, Inc. v. Jacobs*, 134 S. Ct. 584, 590–91 (2013).  The Supreme Court, however, has recognized certain circumstances in which it is appropriate for federal courts to abstain from exercising jurisdiction.  *See id.* at 588.  In this case, the district court abstained under the *Younger* doctrine, which applies where "the prospect of undue interference with state proceedings counsels against federal relief."  *Id.*

Even where *Younger* applies, however, outright dismissal of the action is not always appropriate.  Rather, the Supreme Court has suggested that, as a general matter, actions for monetary damages should be stayed, rather than dismissed, pending the resolution of related state proceedings.  *See Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 721 (1996) ("[W]hile we have held that federal courts may stay actions for damages based on abstention principles, we have not held that those principles support the outright dismissal or remand of damages actions.").[6]

---

[6] We have recognized that if a § 1983 action is barred under *Heck v. Humphrey*, 512 U.S. 477 (1995), a dismissal rather than a stay is appropriate.  *Abella v. Rubino*, 63 F.3d 1063, 1064–65 (11th Cir. 1995).  In this case, though, the district court determined that *Heck* did not apply to Doll's claims and instead abstained under *Younger*.

9

Here, assuming *arguendo* that *Younger* applied at the time Doll's federal complaint was filed, a stay, rather than dismissal, pending the resolution of state proceedings was appropriate because Doll sought only damages for the alleged violations of his constitutional rights. In any case, any error in this regard was harmless because the underlying state proceedings ended well before the district court dismissed the action, and the court addressed and resolved the merits of Doll's claims in the alternative. Accordingly, we turn to the merits of Doll's claims now.

## C.

The district court's final basis for dismissing Doll's case was that his claims failed on the merits. We review *de novo* the district court's grant of summary judgment. *Liebman v. Metropolitan Life Ins. Co.*, 808 F.3d 1294, 1298 (11th Cir. 2015). Summary judgment is appropriate where, viewing the evidence and drawing all reasonable inferences in favor of the party opposing summary judgment, "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id.*; Fed. R. Civ. P. 56(a).

We have recognized that the Due Process Clause of the Fourteenth Amendment guarantees individuals the "right to be free from continued detention after it was or should have been known that the detainee was entitled to release." *Cannon v. Macon Cty.*, 1 F.3d 1558, 1562–63 (11th Cir. 1993), modified on other

grounds, 15 F.3d 1022 (1994); *Douthit v. Jones*, 619 F.2d 527, 532 (5th Cir. 1980).[7]   To establish a § 1983 claim based on such a due-process violation, the plaintiff must show that the defendants acted with deliberate indifference to his due-process rights.   *Campbell v. Johnson*, 586 F.3d 835, 840 (11th Cir. 2009); *West v. Tillman*, 496 F.3d 1321, 1327 (11th Cir. 2007).

Doll argues the defendants showed deliberate indifference to his due-process rights by neglecting to follow the *nunc pro tunc* order that, in his view, plainly reduced his sentence on the burglary count to fifteen years of imprisonment.   He also asserts that he was not originally sentenced as a habitual violent offender, which affected his eligibility for basic gain time.   Based on these contentions, he reasons that his sentence has expired and that, as a result, the individual defendants are knowingly imprisoning him without the legal authority to do so.

The district court properly granted summary judgment against Doll because no reasonable jury could conclude that the defendants continued to imprison him after they knew or should have known that he was entitled to release.   *See Cannon*, 1 F.3d at 1562–63.   The FDOC and the defendants reasonably interpreted the *nunc pro tunc* order as simply correcting the original written sentencing document and not as imposing a new sentence on the burglary count.

---

[7] This Court adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981.   *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*).

11

Under Florida law, the oral pronouncement of the sentence "controls and constitutes the legal sentence imposed." *Williams v. State*, 957 So. 2d 600, 603 (Fla. 2007). If the oral pronouncement conflicts with a written sentencing document, "a court's oral pronouncement of a sentence controls over the written sentencing document." *Id.* And, as a general rule, Florida courts may issue orders *nunc pro tunc* to supply something omitted from the record through inadvertence or mistake. *See Williamson v. Geneva, Inc.*, 550 So. 2d 8, 10 (Fla. Dist. Ct. App. 1989). However, such orders may not be used to "add[] new material to the substance of the earlier proceedings." *Id.*

The defendants' interpretation of the *nunc pro tunc* order is entirely consistent with the oral pronouncement of Doll's sentence and with applicable Florida law. According to the transcript of sentencing, the judge designated Doll a habitual-violent-felony offender before sentencing him to thirty years of imprisonment with a mandatory minimum term of fifteen years on the burglary count. However, the original written sentencing document omitted the fifteen-year minimum mandatory and the habitual-violent-offender designation. So when a judge later issued the *nunc pro tunc* order stating that Doll was "sentenced as a violent habitual offender with fifteen (15) years of minimum mandatory imprisonment as to [the burglary count]," it made perfect sense for the defendants to interpret the order so that it was consistent with, rather than contradictory to, the

oral pronouncement of Doll's sentence.  *See Williams*, 957 So.2d at 603 ("[A] court's oral pronouncement of a sentence controls over the written sentencing document.").  That interpretation is also consistent with the use of *nunc pro tunc* orders generally.  *See Williamson*, 550 So.2d at 10 (stating that *nunc pro tunc* orders are for fixing mistakes, not making substantive changes).  Doll identifies no recognized legal means by which the court could have made a substantive reduction in his sentence through such a *nunc pro tunc* order.

In sum, there is no basis in the record to conclude that the defendants knew or should have known that Doll was entitled to release as a result of the *nunc pro tunc* order.  *See Cannon*, 1 F.3d at 1562–63.  Indeed, the state court's August 2012 order denying Doll's state habeas corpus petition adopted the defendants' interpretation of the *nunc pro tunc* order, confirming the reasonableness of their actions and the lawfulness of Doll's imprisonment.  Accordingly, we affirm the grant of summary judgment in favor of the defendants on Doll's § 1983 claims.

**AFFIRMED.**

13