[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

Nos. 18-10886 ; 18-14531
Non-Argument Calendar

_____

D.C. Docket No. 1:15-cv-00159-MW-GRJ

CHRISTINA PAYLAN,
M.D.,

Plaintiff-Appellant,

versus

SCOTT TEITELBAUM,
M.D. in his individual and official capacities,
UNIVERSITY OF FLORIDA BOARD OF TRUSTEES,
a state operated entity,

Defendants-Appellees,

UNIVERSITY OF FLORIDA,
A state university, et al.,

Defendants.

_____

Appeals from the United States District Court
for the Northern District of Florida

_____

(January 7, 2020)

Before JORDAN, GRANT, and TJOFLAT, Circuit Judges.

PER CURIAM:

Christina Paylan, proceeding pro se, appeals the district court's order granting summary judgment in favor of Scott Teitelbaum on her 42 U.S.C. § 1983 claims for fabrication of evidence, unlawful detention, and unreasonable search and seizure, and her state law claims for false imprisonment and fraud. Additionally, she brings a host of other challenges to the proceedings below. Finding no error, we affirm.

## I.

Because we write only for the benefit of the parties, we limit our recitation of facts to those relevant to the analysis.

Paylan, a physician from Tampa, Florida, was arrested for trafficking in illegal drugs and possession of controlled substances on June 09, 2011.[1] The Florida Department of Health (the Department) investigated, and recommended that she contact the Professional Resource Network (PRN) for a substance abuse evaluation. Paylan was uncooperative, initially refused to provide a hair sample for testing, and refused to stop practicing medicine even though it was recommended.

---

[1] These charges were later dismissed.

2

Paylan was again arrested on July 1, 2011 at the Atlanta Airport. Although Paylan testified that the arrest warrant was based on suspicion that she was "fleeing the country," a PRN report indicated that the arrest occurred because she wrote multiple Demerol prescriptions for a patient that were actually picked up by her fiancé (who was also her employee). On the date of her second arrest, the Medical Director of PRN sent Paylan a letter informing her that, unless she scheduled a substance abuse evaluation within three days, PRN would refer her case to the Department for disciplinary action against her medical license.

Paylan presented herself to Dr. David Myers for an evaluation on July 13, 2011. He collected a hair sample, which tested positive for "metabolites of Demerol at the high extreme of the labs quantitative scale." Myers was unable to complete his evaluation, however, because Paylan stopped cooperating. Still, he was able to conclude that she met the criteria for opioid abuse and that it was not safe for her to practice medicine.

The Department then requested that Paylan submit to a multi-day inpatient evaluation for substance abuse at the Florida Recovery Center, a clinic operated by the University of Florida. Paylan was scheduled for an evaluation on July 20, 2011, but she failed to arrive at the Clinic until 2:00 a.m. on July 21 and left without completing an evaluation. She then failed to appear at multiple other scheduled evaluations. Because Paylan continued to avoid her scheduled

3

evaluations and also continued to practice medicine, PRN informed the Department that Paylan was "a serious and immediate danger to the citizens of the State of Florida."

On August 1, 2011, Paylan finally arrived at the Clinic for an inpatient evaluation by Dr. Teitelbaum, the individual defendant in this case. When Paylan reported to the facility, she had bruises on both of her arms that she explained were the result of injecting weight loss medication. She signed a voluntary admission application. Among other things, this paperwork explained—and required a separate signature acknowledging—that any request for discharge would be granted within 24 hours of the request. The application also explained that the facility might take custody of personal effects when required for medical or safety reasons. When Paylan was admitted, her belongings were searched and several of her personal effects were taken into custody by the staff.

Paylan spent the night of August 1st in the Clinic. According to Paylan, the next morning she demanded to see Teitelbaum at 7:30 a.m. She was told that he was unavailable, but that she would be able to speak to him at 2:30 p.m. She was directed to a group therapy session in the meantime. But when Paylan heard the group therapy participants introducing themselves as drug addicts, she refused to participate. She demanded to be allowed to wait in the reception area and, when her personal effects were not immediately returned, called the police. According

4

to Nancy Goodwin, a secretary at the Clinic, Paylan was "very loud" and angry during this time.

After the police arrived, Teitelbaum instituted an involuntary emergency admission under the Marchman Act. That Florida law allows for the involuntary hospitalization of an individual if there is a good-faith reason to believe that she has lost self-control due to substance abuse and may cause harm to herself or others or, alternatively, is in need of substance-abuse services. Fla. Stat. § 397.675.

In addition to his own observation and evaluation, Teitelbaum had access to records relating to Paylan at the time the emergency admission decision was made. He had received Myers' evaluation of Paylan, including her refusal to complete the initial assessment and his finding that she suffered from opioid abuse. Teitelbaum was also aware of her positive drug test result, and had access to a Department of Health report describing Paylan's arrests for drug trafficking and other drug crimes. The report also referenced a video of Paylan and her fiancé "in a stupor," with "track marks" on their arms, and with "bottles of Demerol and needles strewn around the house."[2]

---

[2] Although the alleged video is described in the report, Teitelbaum never saw it and stated in a deposition that he did not rely on it in forming his conclusions about Paylan.

5

The Marchman Act document—which was signed by Dr. Joel Abraham but also listed Teitelbaum as a certifying physician—explained that both justifications for the Marchman Act were present. The certificate stated that Paylan was likely to inflict physical harm on herself or others and that she was incapable of appreciating her need for care. In the narrative section, the certificate referenced the evaluation by Myers, the photos and videos described in the Department of Health report, the fact that Paylan was actively practicing medicine, and the conclusion that she was incapable of appreciating the need for assessment, stabilization, and possible treatment. During his deposition, Teitelbaum explained that the purpose of the involuntary admission was for him to complete the substance abuse evaluation. He further explained that he was "greatly concerned" that Paylan would go back and see patients, and that he instituted the Marchman Act to make sure that he could report his findings to the Department of Health— the agency with the power to suspend Paylan's medical license.

Shortly after the Marchman Act was invoked, Paylan was taken across the street, to Shands Hospital, where she was held for between four and six hours. Teitelbaum himself came to complete her evaluation. Paylan asserts that Teitelbaum's subsequent evaluation only consisted of inquiring into whether she was suicidal, and that he took no further diagnostic steps. She also claims that

6

Teitelbaum authorized her discharge after she told him that she was not suicidal and would not harm anyone.

That same day, Teitelbaum reported his conclusion—that Paylan was not safe to practice medicine—to the Department of Health.  The agency suspended Paylan's medical license on August 5, 2011.

Paylan filed a lawsuit on July 31, 2015.  She brought a number of claims against Teitelbaum, the University of Florida Board of Trustees, the University of Florida, and the Clinic.  Some of Paylan's claims and named defendants were dismissed.  The remainder of her claims were defeated on a motion for summary judgment.  Paylan now appeals a number of the rulings below.

## II.

*First,* Paylan argues that the district court erred by dismissing her claims of retaliation and unjust enrichment, and by dismissing the Florida Recovery Center as a defendant.  *Second*, Paylan argues that the district court abused its discretion by denying her motion for leave to amend her complaint to add a claim against the University of Florida Board of Trustees for negligent hiring, supervision, and retention.  *Third*, Paylan argues that the district court abused its discretion by denying her motions to extend discovery and reopen discovery.  *Fourth*, Paylan argues that the district court erred by granting summary judgment in favor of Teitelbaum on her remaining § 1983 claims for fabrication of evidence, unlawful

7

detention, and unreasonable search and seizure, and on her state law claims for false imprisonment and fraud. *Fifth*, Paylan argues that the district court abused its discretion by awarding Teitelbaum taxable costs for witness depositions. We affirm the district court. For ease of reference, we will address each claim in turn.[3]

### A.

We find no error in the district court's dismissal of Paylan's First Amendment retaliation claim and unjust enrichment claims, or in its dismissal of the Florida Recovery Center as a defendant. We review the district court's dismissal for failure to state a claim de novo. *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1335 (11th Cir. 2012). The failure to object to a magistrate judge's Report and Recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. 11th Cir. R. 3-1. In the absence of a proper objection, we may review an appeal for plain error if necessary in the interests of justice. *Id.* Here, Paylan failed to timely file objections to the magistrate judge's report dismissing her claims and dismissing the Clinic as a defendant. We therefore will only reverse if we conclude that the district court plainly erred.

---

[3] Paylan also argues that the Northern District of Florida has a silent policy of blocking jury trials. This issue was not raised below and is wholly without merit.

*First*, the district court did not plainly err in dismissing Paylan's retaliation claim.  To state a First Amendment retaliation claim, a plaintiff must establish that (1) his speech or act was constitutionally protected; (2) the defendant's retaliatory conduct adversely affected the protected speech; and (3) there was a causal connection between the retaliatory actions and the adverse effect on speech. *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005).  Because Paylan alleged only a private dispute between her and Teitelbaum, as opposed to retaliatory conduct that adversely affected protected speech, this claim was properly dismissed.

*Second*, the district court did not plainly err in dismissing Paylan's unjust enrichment claim.  Under Florida law, the elements of an unjust enrichment claim are: (1) a benefit conferred upon a defendant by the plaintiff, (2) a voluntary acceptance and retention of that benefit by the defendant, and (3) circumstances that make it inequitable for the defendant to retain the benefit without paying for its value.  *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1337 (11th Cir. 2012).  Because Paylan did not allege that she conferred a benefit on the defendants that they voluntarily accepted, her claim fails.

*Third*, the district court correctly dismissed the Florida Recovery Center as an improperly named defendant.  Lawsuits must be prosecuted in the name of the real party in interest and the capacity to sue or be sued is determined for a

9

corporation by the law under which it was organized. Fed. R. Civ. P. 17(a)–(b). Under Florida law, the University of Florida Board of Trustees is the University of Florida entity with the capacity to be sued. Fla. Stat. § 1001.72. Paylan has not refuted the district court's conclusion that the Florida Recovery Center is a part of the University of Florida. In fact, the evidence cited in her brief specifically identifies Scott Teitelbaum as "an employee of the University of Florida Board of Trustees." Accordingly, the district court's dismissal of the Clinic was not plain error.

## B.

We next reject Paylan's challenges to several pretrial rulings by the magistrate judge. Generally, we review a district court's discovery rulings for abuse of discretion. *Smith v. Sch. Bd. of Orange Cty.*, 487 F.3d 1361, 1365 (11th Cir. 2007). However, appeals "from the magistrate's ruling must be to the district court." *United States v. Renfro*, 620 F.2d 497, 500 (5th Cir. 1980)[4]; *see also Donovan v. Sarasota Concrete Co.*, 693 F.2d 1061, 1066–67 (11th Cir. 1982) (noting that a magistrate judge's decision must be rendered final by the district court prior to appeal). "The law is settled that appellate courts are without

---

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc), this court adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

jurisdiction to hear appeals directly from federal magistrates." *Renfro*, 620 F.2d at 500.

Here, we lack jurisdiction to review the magistrate judge's denial of Paylan's motion for leave to amend her complaint because she did not appeal the magistrate judge's order denying her non-dispositive motion to the district court. For the same reason, we lack jurisdiction to review several of the magistrate judge's rulings on Paylan's motions to extend discovery and reopen discovery.

On the rulings that Paylan did object to (or arguably objected to through her motion for reconsideration) we find no abuse of discretion. The district court did not abuse its discretion in granting a protective order for the deposition of Dr. Regina Bussing (who chaired the Department of Psychiatry) concerning the current practices at the Clinic. Bussing did not become the Chair of the Department until 2014, did not work at the Clinic at the time of the incident, had no firsthand knowledge of the events leading to this lawsuit, and had no supervisory authority over Teitelbaum at the time of the incident. The district court's protective order was particularly appropriate in light of Paylan's statement in another deposition suggesting that she was "going to be intrusive into people's lives." We also readily conclude that the district court did not abuse its discretion in denying Paylan's motion to reopen discovery filed several months after the motions for summary judgment and responses were filed.

11

C.

We next reject Paylan's argument that the district court erred by ruling in favor of Teitelbaum on the remaining § 1983 and state law claims. We review a district court's grant of summary judgment de novo, viewing the evidence, and drawing reasonable factual inferences, in favor of the nonmoving party. *Boyle v. City of Pell City*, 866 F.3d 1280, 1288 (11th Cir. 2017). Summary judgment is appropriate if the movant demonstrates that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. *Id*.; Fed. R. Civ. P. 56(a). Unsupported speculation does not meet a party's burden of producing some defense to summary judgment. *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005).

1.

The district court correctly disposed of Paylan's § 1983 claims. "In order to prevail on a civil rights action under § 1983, a plaintiff must show that he or she was deprived of a federal right by a person acting under color of state law." *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1303 (11th Cir. 2001). Because Paylan has failed to establish the deprivation of any federal right, she cannot prevail on her § 1983 claims.

*First*, she has not presented evidence that Teitelbaum fabricated evidence. We have held that fabricating incriminating evidence violates an accused's

12

constitutional rights. *Riley v. City of Montgomery, Ala.*, 104 F.3d 1247, 1253 (11th Cir. 1997). However, "a court need not entertain conclusory and unsubstantiated allegations of fabrication of evidence." *Kingsland v. City of Miami*, 382 F.3d 1220, 1227 n.8 (11th Cir. 2004).

Here Paylan provided no evidence showing that Teitelbaum fabricated evidence, and merely rests her argument on "conclusory and unsubstantiated allegations." *Id.* Teitelbaum never claimed that he personally created or viewed the disputed video of Paylan referenced in the report. Likewise, Paylan's submission of negative results from drug tests that occurred after her evaluation does not prove, or even suggest, that the initial tests were falsified. And finally, Paylan's assertion that a contradiction between the Myers evaluation and the emergency admission form constitutes fabrication of evidence is unavailing. The Myers evaluation concluded that Paylan met the criteria for opioid abuse, and that she did not allow the evaluation to be completed. In light of these findings, the statement on the emergency admission form that Paylan left the Myers evaluation to procure Demerol, even if incorrect, at most suggests a mistaken connection between those two facts, not the fabrication of evidence. And a trove of evidence from multiple sources supported a good-faith belief that Paylan had a drug problem and posed a danger to herself or others, particularly in her practice of medicine. Paylan has not provided evidence that Teitelbaum fabricated any of it.

13

*Second*, we reject Paylan's § 1983 false imprisonment claim. A § 1983 "claim of false imprisonment requires a showing of common law false imprisonment and a due process violation under the Fourteenth Amendment." *Campbell v. Johnson*, 586 F.3d 835, 840 (11th Cir. 2009). The plaintiff must show (1) an intent to confine, (2) an act resulting in confinement, and (3) the victim's awareness of confinement. *Id.* "The Fourteenth Amendment Due Process Clause includes the right to be free from continued detention after it was or should have been known that the detainee was entitled to release." *Id*. (internal quotation marks omitted).

Paylan's § 1983 unlawful detention claim fails for several reasons. Most conspicuously, she cannot claim that she was falsely imprisoned because she consented to her admission and confinement at the Clinic. Paylan voluntarily admitted herself and signed a form acknowledging that discharge would occur within 24 hours of a discharge request. She was released well within that time period. Moreover, Paylan's brief detention under the Marchman Act was lawful because there was a good-faith basis to believe that she had lost self-control due to substance abuse, might have caused harm to herself or others, and needed substance abuse services. Teitelbaum relied on his own interactions and on reports from other reliable sources in reaching this conclusion.

14

*Third*, Paylan's § 1983 unreasonable search claim fares no better. "The Fourth Amendment prohibits only unreasonable searches. Unreasonableness is determined by a case-by-case balancing of the state's interests against the individual's." *Lenz v. Winburn*, 51 F.3d 1540, 1551 (11th Cir. 1995). Here, Paylan did not allege, and no evidence shows, that Teitelbaum personally searched her property or seized anything from her. Nor has she shown that the search was unreasonable. Paylan voluntarily admitted herself to the Clinic and acknowledges that other patients also had their personal effects searched when entering the facility. She knew that this was possible when she entered the facility, because she signed a voluntary admission form that stated that the staff may take temporary custody of her personal effects for medical or safety reasons. That kind of search upon voluntary admission to a drug-addiction treatment center was not unreasonable under the Fourth Amendment.

As a final point, we also agree with the district court's separate conclusion that, because Paylan failed to establish the violation of a federal right, Teitelbaum is entitled to qualified immunity. Qualified immunity is an affirmative defense that entitles a government actor not to stand trial or face the burdens of litigation in civil damages suits when he was engaged in discretionary conduct that did not violate clearly established statutory or constitutional rights that a reasonable person would have known. *Koch v. Rugg*, 221 F.3d 1283, 1294 (11th Cir. 2000). "In

15

resolving questions of qualified immunity at summary judgment, courts engage in a two-pronged inquiry." *Tolan v. Cotton*, 572 U.S. 650, 655 (2014). First, we ask whether the official's conduct violated a federal right. *Id.* at 656. If so, we then ask whether the right was clearly established at the time of the violation. *Id.* If the answer to either question is in the negative, the defendant is entitled to qualified immunity. Here, Paylan fails at both prongs. She has not overcome Teitelbaum's qualified immunity because there is no evidence showing that Teitelbaum violated any federal right, clearly established or otherwise.

2.

We also find no error in the district court's grant of summary judgment against Paylan's state law claims. Under Florida law, false imprisonment is defined as "forcibly, by threat, or secretly confining, abducting, imprisoning, or restraining another person without lawful authority and against her or his will." Fla. Stat. § 787.02(1)(a). The Marchman Act, however, provides a lawful mechanism to involuntary commit an individual if there is a good-faith reason to believe that she has lost self-control due to substance abuse and either (1) may cause harm to herself or others or (2) needs substance abuse services. Fla. Stat. § 397.675. A physician who acts "in good faith, reasonably, and without negligence" in instituting the Marchman Act "shall be free from all liability, civil or criminal, by reason of such acts." *See* Fla. Stat. § 397.501(10)(b).

16

Paylan's state law false imprisonment claim fails for the same reason as her § 1983 false imprisonment claim. She voluntarily admitted herself to the Clinic and, following her request for discharge, was released within the time period specified on the admission paperwork. In addition, as noted above, we readily conclude that her brief detention was lawful under the Marchman Act.

Her state law misrepresentation claim is also meritless. Under Florida law, the elements of fraudulent misrepresentation are "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in *reliance* on the representation." *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010). Paylan did not allege that Teitelbaum personally made any fraudulent misrepresentations that she relied on to her detriment.

### D.

Finally, we affirm the district court's award of costs for witness depositions. We review a district court's decision about costs for abuse of discretion. *Chapman v. AI Transport*, 229 F.3d 1012, 1039 (11th Cir. 2000) (en banc). We have held that there is a presumption in favor of awarding costs under Fed. R. Civ. P. 54(d)(1). *Arcadian Fertilizer, L.P. v. MPW Indus. Servs., Inc.*, 249 F.3d 1293, 1296 (11th Cir. 2001). Section 1920 of Title 28 allows as taxable costs, among other things,

17

court reporter and transcript fees necessarily obtained for use in the case, fees and disbursements for printing and witnesses, and fees for copies of papers necessarily obtained for use in the case. 28 U.S.C. § 1920(2)–(4).

As to the costs for depositions, such costs are authorized by § 1920(2). *U.S. E.E.O.C. v. W&O, Inc.*, 213 F.3d 600, 620 (11th Cir. 2000). We have held that a "district court may tax costs associated with the depositions submitted by the parties in support of their summary judgment motions." *Id.* at 621 (quotation marks omitted). Even where a deposition is not used by the prevailing party at summary judgment, the party challenging the cost award must show that the "depositions were not related to an issue in the case when the depositions were taken." *Id.* at 622.

The district court did not abuse its discretion in awarding Teitelbaum deposition costs for six identified witnesses because Paylan failed to show that the depositions were unrelated to an issue in the case. Between the two parties, all six depositions were used in support of motions for summary judgment, four of them by Paylan herself.

**AFFIRMED.**