1 F.3d 1558
 Mary CANNON, Plaintiff-Appellant,
v.
MACON COUNTY, a political subdivision of the State of
Alabama; Robin Collins; Elbert Dawson, Mike Knowles,
individually, and Macon County, a political subdivision of
the State of Alabama, Defendants-Appellees.
 No. 92-6200.
 United States Court of Appeals,
Eleventh Circuit.
 Sept. 17, 1993.
As Modified on Denial of Rehearing March 7, 1994.*
 
 John L. Cottle, III, Bowles & Cottle, Tallassee, AL, for plaintiff-appellant.
 Jock M. Smith, Tuskegee Institute, AL, for defendants-appellees.
 Appeal from the United States District Court for the Middle District of Alabama.
 Before FAY and ANDERSON, Circuit Judges, and RONEY, Senior Circuit Judge.
 RONEY, Senior Circuit Judge:
 
 
 1
 In this Sec. 1983 action where an arrest and incarceration resulted from misidentification, we affirm the district court's dismissal of defendant Macon County, but reverse the judgment notwithstanding the verdict in favor of defendant Robin Collins.
 
 
 2
 In March 1989 plaintiff Mary Cannon, whose name was then Mary Rene Parrott, was driving with her three children and her boyfriend, Randy Cannon, to her mother's home in Georgia. When they ran out of funds, they stopped at a rest area and contacted some local relatives to borrow some money. They spent the night in the rest area waiting for the financial help to arrive. The next day, they were questioned by Macon County Sheriff's Deputy Mike Knowles, who offered to try to get aid for them from the Department of Human Resources.
 
 
 3
 Knowles radioed the name "Mary Parrott" to the Macon County Sheriff's office, and got back a "hit" from the National Crime Information Center (NCIC), informing him that a Mary E. Mann, a.k.a. Mary E. Parrott, was wanted for theft by deception in Kentucky. Knowles placed Cannon under arrest and transported her to the Macon County jail. As soon as Knowles arrived at the jail, Deputy Robin Collins, the officer in charge of the jail, sent Knowles out on another assignment. Knowles left the arrest report for Collins to complete. Cannon testified that from the time of her initial detention at the rest area, she repeatedly maintained that she was not Mary E. Mann.
 
 
 4
 Collins initially testified that he obtained information necessary for completing the arrest report directly from Cannon. Collins testified that he identified the plaintiff as Mary E. Mann based on the match in social security numbers and birth dates and the fact that Mann used the alias Mary E. Parrott. He further testified that had there not been a match in the social security numbers and birth dates, then Cannon would not have been arrested and held in the Macon County jail. The critical data Collins wrote on Cannon's arrest report included the following:
 
 
 5
 Last, First, Middle Name: Mary E. Parrott
Alias AKA: Mary E. Mann
 Sex: F
 Race: W
 Hgt: 5'5"
 Wgt: 120
 Eye: Bro
 Hair: Bro
 Skin: Med
 SSN: 317546239
 Date of Birth: 122751
 Age: 38
 
 
 6
 This data does not accurately describe the plaintiff. Cannon's driver's license, which the Sheriff's office apparently had in its files shortly after her arrest, indicates that the plaintiff's name was "Mary Rene Parrott," that she was only 5'1" tall, that her eyes were blue, that her social security number was try-wt-kcmo and that her date of birth was 12-15-63, making her 12 years younger than Mary E. Mann.
 
 
 7
 There was substantial evidence that Collins did not obtain the identifying information from Cannon, but copied it directly from the NCIC report. With one exception, all of the above information that Collins wrote on the arrest report is identical to the NCIC printout on Mary E. Mann. The one exception is the social security number, which belongs to neither Mann nor Cannon. Instead, the social security number provided by Deputy Collins matches the number of another fugitive listed on the same page of the NCIC report containing information on Mary E. Mann.
 
 
 8
 Collins also completed and presented to the Macon County District Judge a "Fugitive Warrant," attesting that he believed Cannon to be the wanted Mary E. Mann.[1] Based on this affidavit, the judge issued a fugitive warrant for Cannon's arrest on March 6, 1989.
 
 
 9
 Cannon testified that on Tuesday, March 7th, she was taken before a Macon County District Judge. At this hearing, Cannon's mother attempted to offer evidence to the judge to show that Cannon was not Mary E. Mann. The judge refused to hear any such evidence, stating that the only purpose of the hearing was to determine if Cannon would waive extradition to Kentucky. Cannon refused to sign a waiver of extradition, and was returned to the Macon County jail.
 
 
 10
 Cannon further testified that, once they were back at the jail, Collins advised her to sign the waiver of extradition or face the possibility of being "played back and forth like on a baseball field." After this conversation, Cannon told Collins that she would waive extradition. She was then taken back before the judge, where she signed the waiver. After spending three more days in the Macon County jail, she was transported to Kentucky. Upon her arrival in Kentucky, Cannon was promptly released when it became evident that Cannon was not Mary E. Mann.
 
 
 11
 Cannon filed a complaint against Macon County, Deputy Robin Collins in his individual capacity, and Macon County Sheriff Elbert Dawson in his official capacity, seeking damages pursuant to 42 U.S.C. Sec. 1983, and asserting pendent state claims of false imprisonment and false arrest. After the district court entered an order dismissing defendants Dawson and Macon County, Cannon amended her complaint, adding Deputy Mike Knowles as an individual capacity defendant, and again asserting a claim against Macon County.
 
 
 12
 The district court then dismissed Macon County with prejudice, and denied Cannon's request for leave to amend her complaint. After a trial against the two individual capacity defendants, the jury returned a verdict in favor of Knowles and against Collins, with a judgment against Collins for $50,000.
 
 
 13
 The district court then granted Collins' motion for judgment notwithstanding the verdict and entered judgment for Collins. Cannon appeals the district court's dismissal of Macon County and the grant of judgment notwithstanding the verdict for Collins.
 
 
 14
 Judgment notwithstanding the verdict for Deputy Collins
 
 
 15
 Cannon's Sec. 1983 claim against Collins was based on an asserted deprivation of liberty without due process[2], and went to the jury on three theories: (1) that Cannon was incarcerated by Collins under circumstances that Collins knew or should have known that Cannon had been arrested without probable cause, (2) that Collins held Cannon in jail for seven days without making any effort to attempt to determine Cannon's identity, and (3) that Collins represented to the district court of Macon County that Cannon was the person wanted in Kentucky without having any reasonable basis for believing that Cannon was Mary E. Mann.
 
 
 16
 The trial court found that judgment notwithstanding the verdict was warranted because Cannon failed to show that Collins violated clearly established law and acted with deliberate indifference. The court also held that Cannon failed to establish her state claims.
 
 
 17
 When reviewing a district court's decision to grant or deny judgment notwithstanding the verdict, we apply the same standard used by the district court. Boeing Co. v. Shipman, 411 F.2d 365, 374 (5th Cir.1969). If the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable jurors could not arrive at a contrary verdict, granting of the motion is proper. On the other hand, if there is substantial evidence opposed to the motion, the motion should be denied. A mere scintilla of evidence is insufficient to present a question for the jury. The substantial evidence standard requires evidence of such quality and weight that reasonable and fair-minded jurors might reach different conclusions. Von Stein v. Brescher, 904 F.2d 572, 578 (11th Cir.1990). A court determining whether the record contains substantial evidence supporting the jury verdict must view the evidence, and all logical inferences therefrom, in the light most favorable to the non-moving party. Smith v. PAPP Clinic, P.A., 808 F.2d 1449, 1452 (11th Cir.1987). We may not weigh the evidence, pass on the credibility of witnesses, nor substitute our judgment for that of the jury.
 
 
 18
 Our inquiry into the propriety of the trial court's grant of judgment notwithstanding the verdict to Collins is two-fold: First, did Cannon present substantial evidence of a cognizable Sec. 1983 claim, and second, does the qualified immunity doctrine shield Collins from liability?
 
 
 19
 Cannon's Sec. 1983 claim against Collins is essentially a claim of false imprisonment rising to the level of a liberty deprivation. The trial court found that Cannon suffered no actionable deprivation of constitutional rights, because under Baker v. McCollan, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979), she had no due process right to have an officer investigate her claims of innocence and mistaken identity.
 
 
 20
 In Baker, the Supreme Court dismissed a fourteenth amendment action brought by a claimant who had been mistakenly incarcerated. The police were actually seeking the claimant's brother, who had previously been booked under the claimant's name because he carried an altered driver's license with his own picture but with the name and other identifying information of the claimant. After being transferred to the county seeking his arrest, the claimant was held for three additional days before it was discovered, based on a file photo of the brother, that they had detained the wrong person.
 
 
 21
 The court held that detention pursuant to a valid warrant but in the face of protests of innocence does not necessarily deprive one of liberty without due process. Arresting officers and those responsible for maintaining custody of detainees are not constitutionally required "to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent." Id. at 146, 99 S.Ct. at 2695.
 
 
 22
 Under certain circumstances, however, detention on the basis of misidentification may present a viable Sec. 1983 claim. The Baker Court recognized, for example, that after the lapse of a certain amount of time, continued detention in the face of repeated protests will deprive the accused of liberty without due process. Id. at 144, 99 S.Ct. at 2694.
 
 
 23
 The Baker decision has not been read to preclude all Sec. 1983 claims based on false imprisonment. In Douthit v. Jones, 619 F.2d 527 (5th Cir.1980), we stated that a Sec. 1983 false imprisonment claim must meet the elements of common law false imprisonment[3] and establish that the imprisonment worked a violation of fourteenth amendment due process rights. Id. at 532. We held in that case that the plaintiff's claim based on detention for 30 days beyond the expiration of the plaintiff's sentence without a valid court order or warrant was not precluded by Baker.
 
 
 24
 The constitutional right to be free from continued detention after it was or should have been known that the detainee was entitled to release has been recognized in other circuits as well. See Sivard v. Pulaski County, 959 F.2d 662 (7th Cir.1992) (continued detention where sheriff knew it was wrongful states claim under Sec. 1983 for due process violation); Sanders v. English, 950 F.2d 1152 (5th Cir.1992) (failure to release after officer knew or should have known that plaintiff had been misidentified gives rise to cause of action under Sec. 1983).
 
 
 25
 The defendant's state of mind is also relevant to a Sec. 1983 claim for substantive due process violations. The Supreme Court has stated that negligent conduct does not give rise to Sec. 1983 liability for resulting unintended loss of or injury to life, liberty, or property. Davidson v. Cannon, 474 U.S. 344, 347, 106 S.Ct. 668, 670, 88 L.Ed.2d 677 (1986); Daniels v. Williams, 474 U.S. 327, 328, 106 S.Ct. 662, 663, 88 L.Ed.2d 662 (1986). Neither the Davidson nor the Daniels decision, however, articulated the precise level of culpability necessary to give rise to Sec. 1983 liability for deprivations of due process rights.
 
 
 26
 This court has, in cases dealing with prisoners and other persons in state custody, held that a showing of deliberate indifference is required to establish a violation of substantive due process rights protected by the fourteenth amendment. The deliberate indifference requirement was adopted based on analogies to eighth amendment situations where the defendant's state of mind was relevant to the issue of whether a constitutional violation has occurred in the first place. See Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (deliberate indifference to prisoner's serious illness or injury violates eighth amendment prohibition against cruel and unusual punishment); Edwards v. Gilbert, 867 F.2d 1271 (11th Cir.1989) (deliberate indifference showing necessary in prisoner suicide case alleging Sec. 1983 cause of action for violation of substantive rights protected by eighth and fourteenth amendments); Taylor v. Ledbetter, 818 F.2d 791 (11th Cir.1987), cert. denied, 489 U.S. 1065, 109 S.Ct. 1337, 103 L.Ed.2d 808 (1989) (child abused by foster care parent must show deliberate indifference or gross negligence to establish Sec. 1983 liability in action brought against state officials for violation of substantive due process rights protected by fourteenth amendment). See also Baker v. McCollan, 443 U.S. 137, 140 n. 1, 99 S.Ct. 2689, 2692 n. 1, 61 L.Ed.2d 433 (1979) (discussing state of mind necessary to establish certain constitutional violations as separate and distinct from the state of mind sometimes necessary to establish Sec. 1983 liability).
 
 
 27
 We held in Taylor v. Ledbetter that a complaint alleging gross negligence or deliberate indifference to the welfare of a child placed in a foster home was sufficient to overcome the Daniels and Davidson bar on liability for negligent conduct causing due process violations. 818 F.2d at 793. The jury in the instant case was instructed on the deliberate indifference standard, and found that Collins' conduct met that standard. Based on the following evidence that was presented to the jury, we conclude that the jury finding that Collins acted with deliberate indifference to Cannon's due process rights is supported by substantial evidence:
 
 
 28
 1. Cannon testified that she gave her driver's license and other forms of identification to the authorities upon her arrival at the jail.
 
 
 29
 2. A copy of Cannon's driver's license was in the files of the Macon County Sheriff's Office.
 
 
 30
 3. The information on Cannon's driver's license differed significantly from the description provided for Mary E. Mann on the NCIC computer printout.
 
 
 31
 4. Cannon's physical makeup did not match the physical description for Mary E. Mann.
 
 
 32
 5. Collins testified that he completed the arrest procedure upon Cannon's arrival at the jail. Although he originally testified that he obtained all of the information he used to fill out the arrest report directly from Cannon, he later conceded that it was possible that he obtained some of the information from the NCIC report rather than from Cannon.
 
 
 33
 6. Cannon testified that Monday, March 6, was the first time she saw Collins.
 
 
 34
 7. Collins signed the arrest report as the arresting officer.
 
 
 35
 8. Collins testified that he would not have arrested Cannon and held her in jail if he had known that her Social Security Number and date of birth were different from the Social Security Number and date of birth of Mary E. Mann.
 
 
 36
 9. In an affidavit presented to the Macon County judge, Collins swore that he believed Cannon to be the wanted Mary E. Mann.
 
 
 37
 Collins' failure to take any steps to identify Cannon as the wanted fugitive was sufficient to raise a question of fact as to his deliberate indifference toward the plaintiff's due process rights. Cannon presented sufficient evidence from which a jury could find that Collins acted with deliberate indifference when he completed the arrest procedure and obtained a fugitive warrant for her arrest without speaking to Cannon and without making any attempt to identify her as the person wanted in Kentucky. The evidence does not point so strongly in favor of Collins that reasonable jurors could not come to a different conclusion. Judgment notwithstanding the verdict based on failure to prove deliberate indifference was not warranted.
 
 
 38
 The district court also found that judgment notwithstanding the verdict was warranted based on the qualified immunity doctrine. The court concluded that Collins was immune from suit because Cannon had no clearly established right to have an officer investigate her claims of innocence.
 
 
 39
 The test for determining whether a public official can claim qualified immunity was established by the Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). "[G]overnment officials ... generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Id. at 818, 102 S.Ct. at 2738. The official's conduct is evaluated under an objective, reasonable official standard. Anderson v. Creighton, 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987). A government official performing discretionary functions is protected if "a reasonable official could have believed his or her conduct to be lawful in light of clearly established law and the information possessed by the official at the time the conduct occurred." Hardin v. Hayes, 957 F.2d 845, 848 (11th Cir.1992).
 
 
 40
 Collins is shielded from personal liability for conduct that is within the discretion conferred by his employment, unless the legal norms allegedly violated were clearly established at the time of the challenged actions. Dartland v. Metropolitan Dade County, 866 F.2d 1321 (11th Cir.1989), citing Mitchell v. Forsyth, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). If a reasonable official in Collins' position could have believed his actions were lawful in light of clearly established law at the time the conduct occurred, immunity applies. Stewart v. Baldwin County Bd. of Educ., 908 F.2d 1499 (11th Cir.1990).
 
 
 41
 At the time of the relevant conduct, Cannon had a clearly established right against false imprisonment without due process. See Douthit v. Jones, 619 F.2d 527 (5th Cir.1980). We are mindful of the admonition against reliance on broad legal generalities when considering whether certain conduct crosses the line from the lawful to the unlawful. See Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). We have in the past, however, rejected the argument that a claimant has no clearly established right where no precedent held that the official's specific action (discontinuing administration of psychotropic drugs) in materially similar circumstances had created Sec. 1983 liability. Greason v. Kemp, 891 F.2d 829, 834 n. 10 (11th Cir.1990). An approach recognizing the constitutional right yet finding no violation "unless some prior court has expressly so held on 'materially similar' facts ... would add an unwarranted degree of rigidity to the law of qualified immunity." Id. Accordingly, we hold that at the time of Cannon's incarceration, and considering all the evidence in the light most favorable to Cannon, a reasonable official in Collins' position would have known that Collins' conduct could violate Cannon's fourteenth amendment right not to be falsely imprisoned. A reasonably well trained officer would have at least attempted to obtain information from Cannon for purposes of filling out Cannon's arrest report, rather than copying data from an NCIC computer printout. A reasonable official also would be unlikely, in the face of Cannon's assertions of mistaken identity, to sign an affidavit swearing to a belief that Cannon was a wanted fugitive without taking any steps to verify that belief.
 
 
 42
 Cannon introduced substantial evidence showing that her fourteenth amendment due process rights were violated by Collins, who was responsible for completing the arrest procedure, and who presented to the judge the affidavit that served as the basis for the issuance of the fugitive warrant for Cannon's arrest. Because the jury was presented with substantial evidence that Collins unreasonably violated Cannon's clearly established right, judgment notwithstanding the verdict based on failure to prove a violation of clearly established law was not warranted.
 
 Dismissal of Macon County
 
 43
 In her first amended complaint, Cannon set forth the basis for County liability as follows:
 
 
 44
 It is the standard policy, practice and procedure of the Macon County Sheriff's Department to arrest fugitives wanted by other states based upon information obtained through the NCIC computer network rather than upon a valid warrant of arrest as required by Sec. 15-9-35, Code of Alabama (1975). The policy, practice, and procedure of the Macon County Sheriff's Department in this regard is tantamount to the policy, practice and procedure of Macon County itself.
 
 
 45
 In granting the County's motion to dismiss, the trial court recognized that, under Parker v. Williams, 862 F.2d 1471 (11th Cir.1989), a county may be held liable for customs established by a Sheriff with ultimate county authority over such matters. The court concluded, however, that liability did not attach in this case because "it is difficult to see how the Sheriff would have final authority over who each deputy arrests and whether a deputy has probable cause to arrest and/or hold arrestee." Cannon v. Macon County, 90V-1132-E (Dec. 19, 1990).
 
 
 46
 A complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts" which would entitle her to relief. Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the averments of the complaint should be construed in the light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).
 
 
 47
 Cannon's first amended complaint alleges facts supporting her contention that she was arrested in violation of Alabama law and in violation of her due process rights. It fails, however, to allege any facts whatsoever to indicate that the alleged violation was a result of a County policy or practice that would give rise to County liability. The district court properly granted the County's motion to dismiss.
 
 
 48
 Cannon also asserts that the district court abused its discretion in denying her motion to file a second amendment to her complaint. After the County's first motion to dismiss was granted, Cannon requested leave to amend to state a claim against the County. The motion was apparently granted. Cannon's amended claim against Macon County was then dismissed with prejudice, and her request for leave to amend a second time was denied.
 
 
 49
 Federal Rule of Civil Procedure 15(a) provides that after a responsive pleading has been filed, subsequent amendments are permitted only with leave of the court. The decision whether to grant leave to amend is committed to the sound discretion of the district court. Although that discretion is restricted by the policy of Rule 15, requiring that leave to amend be freely given when justice so requires, see Shipner v. Eastern Air Lines, 868 F.2d 401 (11th Cir.1989), we find no reason to conclude that the district court abused its limited discretion in denying leave to amend.
 
 
 50
 Accordingly, we affirm the district court's grant of dismissal to Macon County and denial of Cannon's request for leave to amend, but reverse the judgment notwithstanding the verdict in favor of Collins.
 
 
 51
 AFFIRMED in part, REVERSED in part, and REMANDED.
 
 
 
 *
 See 15 F.3d 1022
 
 
 [1]
 The warrant signed by Collins stated:
 Before me, Auburey Ford, Jr., Judge of the District Court of Macon County, State of Alabama, personally appeared Officer Robin Collins, who being first sworn, deposes and says on oath that __________ a credible person in the State of __________ has made an affidavit that the crime of 5 counts of Theft by Deception has been committed in such State; and that Mary E. Mann has been charged in said State with the commission of said crime and has fled from justice there. Affiant further says and deposes that Mary E. Mann is believed to have been found in Macon County, Alabama.
 
 
 [2]
 42 U.S.C. Sec. 1983 provides:
 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.
 
 
 [3]
 The elements of common law false imprisonment are " '(1) intent to confine, (2) acts resulting in confinement, and (3) consciousness of the victim of confinement or resulting harm.' " Douthit v. Jones, 619 F.2d 527, 532 (5th Cir.1980) (citations omitted)