In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 21-2024

ELI MARTINEZ,

*Plaintiff-Appellant,*

*v.*

MINERVA SANTIAGO and
OSCAR GARAY,

*Defendants-Appellees.*

———————————

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 18-CV-1909 — **Nancy Joseph**, *Magistrate Judge.*

———————————

ARGUED DECEMBER 7, 2021 — DECIDED OCTOBER 17, 2022

———————————

Before ROVNER, ST. EVE, and JACKSON-AKIWUMI, *Circuit Judges.*

JACKSON-AKIWUMI, *Circuit Judge.* Eli Martinez spent four and a half days in custody while he tried to explain to his jailers that his brother, Hector M. Rodriguez, was the one described in an arrest warrant. After Martinez was released, he sued two probation officers. He argued that they violated his right to due process. But the district court entered summary

judgment for the probation officer defendants, concluding that they had investigated Martinez's claims of innocence and were at most negligent for not figuring things out faster.

We affirm. Although defendants could have improved aspects of their investigation, Martinez has not provided evidence showing that they were deliberately indifferent to his claims of mistaken identity and therefore violated his right to due process.

**I**

In 2015, Rodriguez was arrested in Wisconsin for domestic violence. He lied to the police and gave the police his brother's name and date of birth. He was eventually convicted and sentenced to probation for battery and disorderly conduct charges. Although the court had by then learned Rodriguez's real name, the judgment of conviction nonetheless listed "Ely M. Martinez" as an alias for Hector Rodriguez and still listed Martinez's date of birth. Rodriguez failed to report for probation, and an arrest warrant issued with the same information as the judgment.

Years later, police arrested Eli Martinez for an unrelated offense. Police booked him in the Milwaukee County Jail on a Wednesday, under the alias that Rodriguez had invented: "*Ely* Martinez." The next day, the district attorney decided not to press charges. But a warrant check revealed the outstanding warrant for Rodriguez, so jail officials sent a request late Thursday night to the Wisconsin Department of Corrections to confirm the warrant. The request went to Rodriguez's probation officer, Minerva Santiago, and her supervisor, Oscar Garay.

Santiago and Garay received the message about Rodriguez's warrant on Friday morning. Although Santiago was Rodriguez's probation officer, she had never met him in person; she received the case when her predecessor left the DOC, after Rodriguez had already absconded. Nonetheless, Santiago was immediately concerned about whether the jail was holding the right person because a couple years earlier, police had mistakenly arrested a "Hector Rodriguez, Jr." who was unrelated to either man but coincidentally shared a birthday with Martinez (on what the DOC believed to be Rodriguez's birthday).

Accordingly, after receiving notice that a "Hector Rodriguez" was again in jail in Milwaukee, Santiago contacted Rodriguez Jr. to verify that he had not been mistakenly arrested. Upon confirmation that Rodriguez Jr. was still free, Santiago and Garay assumed that the correct Rodriguez had been arrested and authorized an order to detain "Hector M. Rodriguez" who they said was booked as "Ely Martinez."

Later that morning, however, Martinez's girlfriend met with Santiago and Garay to tell them that they had the wrong person in custody. Garay told her that they would need to verify the identity of the person in custody before they let him free. The girlfriend gave them Martinez's social security card and explained that Martinez and Rodriguez were brothers. She also explained that Martinez had previously been on parole in Pennsylvania and gave them the contact information for Martinez's old parole officer as well as Rodriguez's wife.

Santiago followed up on this new information. She called Rodriguez's wife but got no answer. She then called Martinez's former parole officer, who confirmed that Martinez and Rodriguez were different people and that Martinez had

been in prison when Rodriguez was arrested in 2015. At some point, Santiago also contacted Pennsylvania's Records Office to ask for photos and FBI numbers for each brother.

Meanwhile, Garay looked up Martinez on Milwaukee County's public inmate search and found a picture of Martinez from the recent booking. Garay then requested access to a private internal database that he could use to compare the information of the currently booked "Eli Martinez" against the booking information for the "Hector M. Rodriguez" / "Ely Martinez" arrested in 2015. But he did not receive a password for that database until several days later.

Also on Friday morning, Santiago contacted the DOC liaison at the county jail and asked for a copy of Rodriguez's 2015 booking photo and fingerprints. The liaison instead emailed back a copy of *Martinez's* booking photo from the current arrest and, even then, the photo was a blurry grayscale photocopy. The liaison said that Santiago would need to wait for an original copy in the mail. The liaison further explained that Santiago would need to file an open-records request if she wanted Rodriguez's fingerprints. Santiago filed an open-records request for Rodriguez's booking photos and fingerprints from 2015. But Santiago and Garay would not receive this information until after Martinez's release.

On Monday, Martinez was transferred to the Milwaukee Secure Detention Facility. That afternoon, Santiago contacted the DOC liaison again to ask for an update on Martinez's booking photo. The liaison had not yet mailed the original photo, so she asked Santiago to come to the jail to pick it up. Santiago also followed up with the Pennsylvania Records Office, and it responded with photos of both Martinez and Rodriguez, as well as their FBI numbers and social security

numbers. This information showed that Martinez had been under supervision in Pennsylvania from 2013 to 2016, and thus could be ruled out as the man who had been arrested and convicted in Wisconsin in 2015.

Santiago met with Garay and told him that they had enough information to positively identify the detainee. They decided to interview Martinez to compare his appearance with the photos. But it was too late in the day to request a same-day release under the prison's rules, so Santiago and Garay resolved to wait until the next day to meet with Martinez. The prison had an emergency-release policy that would have allowed Martinez to be released that day notwithstanding the prison's rules. Garay was aware that the prison had an emergency-release policy for use in situations like medical emergencies, but nothing in the record suggests that he knew it applied to wrongful incarcerations.

On Tuesday morning, Santiago and Garay met Martinez. They confirmed that his appearance and tattoos matched his Pennsylvania records. Martinez was released, about four and a half days after jail officials first contacted Santiago and Garay.

Martinez sued Santiago and Garay under 42 U.S.C. § 1983, claiming that they violated his right to due process because they authorized his continued detention even after they were aware or should have been aware that he was not the person identified in the 2015 warrant. The district court entered summary judgment for defendants because, the court concluded, Martinez's detention was relatively brief and Martinez could not show that defendants failed to investigate or ignored evidence of his innocence. Perhaps defendants' actions were

negligent, the court reasoned, but Martinez could not establish a constitutional violation.

## II

Martinez does not challenge the legality of his initial arrest for an unrelated charge, nor the legality of the 2015 warrant issued for his brother. But he argues that a jury could find that defendants continued to hold him after they were aware or deliberately indifferent to the fact that he was not the man described in the warrant. He asserts a claim under the Due Process Clause of the Fourteenth Amendment, which we have previously held applies to claims of illegal continued detention following an arrest on a valid warrant. *See Coleman v. Frantz*, 754 F.2d 719, 724 (7th Cir. 1985) (citing *Baker v. McCollan*, 443 U.S. 137, 145 (1979)).[1]

The seminal case for this type of mistaken-identity claim is *Baker v. McCollan*, 443 U.S. 137, the facts of which are strikingly similar to those here. *Baker* also involved a plaintiff who was mistaken for his brother after the brother used the plaintiff's name as an alias and then absconded. *Id.* at 141. The

---

[1] Although our *Coleman* decision relied on *Baker* to conclude that this type of claim arises under the Due Process Clause of the Fourteenth Amendment, the Supreme Court more recently held that claims for unlawful pretrial detention generally arise under the Fourth Amendment, regardless of whether legal process has been initiated or a judicial officer has made a probable halfcause determination. *Manuel v. City of Joliet*, 137 S. Ct. 911, 918–19 (2017). Although *Manuel* arguably suggests that Martinez should have asserted his claim under the Fourth Amendment, nothing in *Manuel* indicates that the Court intended to overrule *Baker*. And Martinez has not asserted a Fourth Amendment claim, nor have the parties briefed the issue. Accordingly, we consider only whether Martinez adduced sufficient evidence to support a Fourteenth Amendment due process claim under *Baker*.

plaintiff was arrested after his brother's warrant popped up during a routine traffic stop, and he remained in jail for about three days despite his protestations that he was the wrong man. *Id.* Eventually, someone looked at a photo of the real defendant, realized the error, and released him. *Id*. The plaintiff sued for violation of his due process rights.

The *Baker* Court held that the plaintiff's ordeal did not create a claim under § 1983. It explained that "[t]he Constitution does not guarantee that only the guilty will be arrested." *Id.* at 145. And because plaintiff did not attack the validity of the warrant under which he was arrested, his relatively brief detention did not amount to a deprivation of his liberty without due process. *Id.* at 144–45. A sheriff executing an arrest warrant is not required to investigate independently every claim of innocence, nor are officials who maintain custody of the accused required to perform an error-free investigation of such a claim. *Id.* at 145–46. The ultimate determination for any claim of innocence—including claims that an arrest is premised on mistaken identity—is in the hands of the judge and jury. *Id*.

Although the *Baker* Court held that a mistaken-identity arrest will not normally violate the constitution, it carved out some important exceptions. Even someone arrested and detained in compliance with the Fourth Amendment cannot be held "indefinitely in the face of repeated protests of innocence" because that would violate speedy trial rights. *Id.* at 144. The Court also assumed that "after the lapse of a certain amount of time," detention pursuant to a valid warrant but in the face of repeated protests of innocence could violate due process. *Id.* at 145.

Expanding from these exceptions, we have reasoned that the Due Process Clause does not allow government officials to continue holding a detainee after learning that they lack authority to do so. *See Sivard v. Pulaski Cnty.*, 959 F.2d 662, 668 (7th Cir. 1992); *Powe v. City of Chicago*, 664 F.2d 639, 643 (7th Cir. 1981). Other circuits have also crafted rules requiring jailers to release detainees upon learning of the detainee's innocence.[2] To determine if an official has violated a detainee's due process rights, we apply a deliberate-indifference standard, which is the general standard applicable to claims arising under substantive due process. *See Flores v. City of S. Bend*, 997 F.3d 725, 730 (7th Cir. 2021); *Armstrong v. Squadrito*, 152 F.3d 564, 576 (7th Cir. 1998) (analyzing whether jailers were deliberately indifferent to detainee's prolonged detention caused by clerical error).

A plaintiff trying to establish deliberate indifference faces a difficult task. For his claim to survive summary judgment, Martinez must provide evidence showing that defendants acted with a mental state equivalent to criminal recklessness.

---

[2] *See, e.g., Lee v. City of Los Angeles*, 250 F.3d 668, 683-84 (9th Cir. 2001) (plaintiff stated claim for violation of due process by alleging that defendants acted with deliberate indifference when arresting and extraditing schizophrenic man without checking identity); *Cannon v. Macon Cnty.*, 1 F.3d 1558, 1563 (11th Cir. 1993) (recognizing right to be free from "continued detention after it was or should have been known that the detainee was entitled to release."); *Sanders v. English*, 950 F.2d 1152, 1159, 1162 (5th Cir. 1992) (no claim against police chief who was merely negligent in failing to investigate plaintiff's claim of innocence, but claim against a different officer who "deliberately looked the other way in the face of exonerative evidence indicating that he had arrested the wrong man."); *Gay v. Wall*, 761 F.2d 175, 178 (4th Cir. 1985) (plaintiff stated claim when he alleged that defendants continued to hold him despite "actual knowledge" that he was the wrong person).

*See Flores*, 997 F.3d at 729. Mere negligence is not enough. A government official's negligent actions—even if they result in an injury to life, liberty, or property—cannot establish an actionable violation of due process. *Daniels v. Williams*, 474 U.S. 327, 333 (1986). To be sure, Martinez need not show that defendants intentionally violated his rights. *Flores*, 997 F.3d at 729. But "[d]eliberate indifference occupies a space slightly below intent." *Stockton v. Milwaukee Cnty*., 44 F.4th 605, 615 (7th Cir. 2022). Martinez's claim is entitled to go forward if he can show that defendants "consciously refused to prevent" an impending harm of which they were aware. *Flores*, 997 F.3d at 729.

Here, rather than a conscious disregard of Martinez's innocence, the undisputed facts show that Santiago and Garay seriously considered his claim of wrongful identification and took steps to investigate it. When Martinez's girlfriend told them that they had the wrong brother, they addressed the situation by interviewing Martinez's girlfriend, calling Rodriguez's wife, calling Martinez's former parole officer, ordering records from Pennsylvania, and seeking booking photos from the jail. Before releasing Martinez, defendants were entitled to take these steps to verify Martinez's girlfriend's claim that Martinez was innocent. *See Hernandez v. Sheahan*, 455 F.3d 772, 775 (7th Cir. 2006). Once they confirmed Martinez's innocence, they released him.

Martinez insists that defendants did not release him until Tuesday when they were aware by Friday afternoon that they had the wrong man. By then, defendants had both brothers' photos and enough information to positively identify the person in detention as "Eli Martinez." They also knew that an "Eli Martinez" had been in Pennsylvania when Rodriguez

was arrested in Wisconsin in 2015. From this evidence, a reasonable jury could conclude that defendants knew on Friday that Martinez was not "Hector M. Rodriguez."

Martinez's identity, however, was "only half the equation." *Id.* at 777. Defendants still needed to confirm which brother the warrant was supposed to target. Remember, by Friday afternoon defendants still did not have the 2015 booking photos or any other identifying information related to Rodriguez's arrest and conviction. Nor did they have any photos of the "Eli Martinez" who had been in Pennsylvania at the time of Rodriguez's arrest. For all defendants knew, Martinez was the one who had absconded from probation, and the warrant said Rodriguez only because *Martinez* gave a false name. *See id.* (explaining the calculus jailers must go through when facing claims of misidentification). Only after they received photos from the Pennsylvania Records Office—positively identifying Martinez as the person who had been in Pennsylvania during Rodriguez's arrest—could they rule out the possibility that they had been looking for "Eli Martinez" all along. Defendants were not deliberately indifferent because they wanted to verify the identities of both Martinez and the man described in the warrant.

We are not persuaded by Martinez's argument that the wording of Santiago's open-records request on Friday confirms her subjective knowledge that he was the wrong person. Santiago wrote in her records request that "Hector Rodriguez" had been arrested in 2015, that Rodriguez gave his brother's information, and that "his brother Eli Martinez" was now in custody. Martinez reads this request as an admission that she already knew all the necessary facts. But Santiago's language reads as nothing more than an effort to quickly get

across the gravity of the situation. Santiago also emphasized that the case was "very complex" and additional information was needed to "make sure we can place the right person in custody." Moreover, she explained that the brothers' criminal records had become mixed, and that their FBI numbers seemed to link to information about the wrong person. Read as a whole, and taken in context of the surrounding events, no reasonable jury could think that Santiago was certain that Martinez was the innocent brother who had been arrested. Based on the information available to her at that time, it was impossible for her to know for sure.

Martinez next takes issue with defendants' delay on Monday afternoon once they received the brothers' photos from Pennsylvania. By then, the parties agree that Santiago had gathered enough information to confirm that Martinez was wrongly incarcerated. But she and Garay decided to wait until the next day to meet with Martinez because they had missed the deadline for requesting an inmate's same-day release, even though the prison had a policy allowing for emergency after-hours releases, including in cases of wrongful imprisonment. Martinez argues that this additional delay violated his due process rights because defendants had no reason to wait until morning to request his release.

We are not convinced that this overnight delay evinces deliberate indifference. Nothing in the record indicates that Santiago knew about the emergency-release policy. And the only evidence of Garay's knowledge of the policy is an email he received from a DOC official. That email stated that if a probation officer had "an emergency situation where you need to have an offender released after [the 2:45 p.m.] deadline, MSDF has agreed to work with us to the extent they are able.

An example of emergency would be an offender with medical concerns." Perhaps a jury could find that a reasonable officer in Garay's position *should* have known that the prison would honor an after-hours request in case of wrongful incarceration, or at the very least that he should have sought clarification about how the policy applied to non-medical emergencies. But such findings would not describe deliberate indifference, only that defendant's mistake regarding MSDF's policies was negligent. Nothing in the record suggests that defendants deliberately held Martinez overnight even though they knew they could obtain his release sooner.

To be clear, we are not saying that defendants' investigation was perfect. They could have sent his photo to his former parole officer in Pennsylvania, who could have verified his identity and whereabouts in 2015 faster than the Pennsylvania Records Office. Or Santiago could have promptly obtained Rodriguez's 2015 booking photos if she had gone in person to the DOC liaison's office instead of filing an open-records request. But even if defendants could have been more efficient, the constitution does not require officials to perform a perfect investigation. *Baker*, 443 U.S. at 145–46. Defendants' failings support, at most, a finding of negligence. And negligence cannot support a § 1983 claim for denial of due process. *Daniels*, 474 U.S. at 333.

## III

For the above reasons, we AFFIRM the judgment.