**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-1286
_____

YARELIS RIVERA
Appellant

v.

DIRECTOR RONALD P. EDWARDS, In his official and individual capacity; C.O.
HOUGHTON, In his official and individual capacity; SERGEANT PRIEDE, In his
official and individual capacity; MS. BUTLER, In her official and individual capacity;
C.O. JACKSON, In his official and individual capacity; SERGEANT BARRY, In his
official and individual capacity; SERGEANT CAMPENZINO, In his official and
individual capacity; JOHN DOES 1-10; ABC CORPS 1-10
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 2:21-cv-03131)
District Judge:  Honorable Madeline Cox Arleo
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
November 14, 2023
_____

Before:  CHAGARES, <u>Chief</u> <u>Judge</u>, MATEY and FUENTES, <u>Circuit</u> <u>Judges</u>

(Opinion filed: November 21, 2023)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not
constitute binding precedent.

CHAGARES, Chief Judge.

Yarelis Rivera was detained by three separate law enforcement agencies between December 20, 2019 and December 26, 2019 despite the fact that she was not the person identified in the outstanding warrant that formed the basis for her arrest. Alleging that she was excessively detained in violation of her constitutional rights, she filed a lawsuit under 42 U.S.C. § 1983 against employees of the two New Jersey counties that detained her. She now appeals from the District Court's dismissal of those claims. Because the defendants' conduct did not violate any of Rivera's clearly established constitutional rights, we will affirm.

I.

We write solely for the parties and so recite only the facts necessary to our disposition.[1] On December 20, 2019, prior to her scheduled disembarkment from a cruise ship, Rivera was stopped by officers from the United States Customs and Border Patrol ("CBP") and arrested pursuant to an outstanding bench warrant issued by the Superior Court of New Jersey, Cumberland Vicinage. See Joint Appendix 351. Upon her arrest and during her time in CBP custody, Rivera insisted that she was not the individual named in the warrant. She further provided officers with her personal information, including her Social Security number, which differed by one digit from the Social Security number provided in the warrant. CBP officers did not fingerprint her,

_____

[1] These facts are drawn from the allegations in the Second Amended Complaint, which we accept as true when reviewing a district court's order granting a motion to dismiss. Keystone Redevelopment Partners, LLC v. Decker, 631 F.3d 89, 95 (3d Cir. 2011).

2

however.  That same day, they transferred her to the custody of Hudson County, which employs defendants Edwards, Houghton, Priede, and Butler (collectively, the "Hudson County Defendants").

Rivera was not fingerprinted when she entered the custody of Hudson County. Not until December 22, 2019, two days later, did defendant Priede listen to her claims that she had been mistakenly identified as the individual sought under the Cumberland County warrant.  But while Priede allegedly investigated Rivera's complaints and recognized that the bench warrant provided an invalid basis upon which to detain her, he did not release her, purportedly because she could be released only by authority of the entity that had issued the warrant.  Rivera was then transferred on December 24, 2019, two days later, to the custody of Cumberland County, which employs defendants Jackson and Barry (collectively, the "Cumberland County Defendants," and with the Hudson County Defendants, the "State Defendants").  She again insisted that she was not the individual named in the bench warrant when she arrived in Cumberland County, and she was finally fingerprinted, confirming that her prints did not match those associated with the warrant.  She remained in the custody of Cumberland County for two more days, however, before she was finally released on December 26, 2019.

On February 22, 2021, Rivera filed a lawsuit against the State Defendants and other state and federal agencies and employees, asserting claims under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), under 42 U.S.C. § 1983, and under New Jersey law.  Rivera amended her Complaint the following day.  After the District Court dismissed her First Amended Complaint, granting leave to

amend, Rivera filed her Second Amended Complaint on June 1, 2022, asserting claims against the Hudson County Defendants and the Cumberland County Defendants under 42 U.S.C. § 1983, as well as claims under New Jersey law.[2] The District Court dismissed with prejudice her claims under section 1983 and under the New Jersey Civil Rights Act, which provides a state-law remedy for the violation of rights guaranteed by the federal constitution, in each case because the allegations in the Second Amended Complaint failed to establish that Rivera had been deprived of a right secured by the Fourteenth Amendment. The District Court further declined to exercise supplemental jurisdiction over Rivera's remaining state-law claims. Rivera timely appealed.

II.[3]

The State Defendants argue that Rivera's claims under section 1983 could have been properly dismissed on two independent grounds — first, they argue, she failed to allege that she was deprived of any right secured by federal law as a result of their conduct, and second, they would be entitled to qualified immunity even had they infringed upon such a right because the unlawfulness of their conduct was not clearly established. As we read it, the Second Amended Complaint alleges that Rivera was

---

[2] The allegations in the Second Amended Complaint concerning defendant Campenzino (who was sued as "Campezino" in the District Court), pertain only to Rivera's state-law claim for negligence, the dismissal of which she does not appear to challenge in this appeal. Consequently, we do not further discuss him in this opinion.

[3] The District Court had jurisdiction under 28 U.S.C. § 1331, and we have appellate jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over an appeal from a district court's order granting a motion to dismiss, Keystone Redevelopment Partners, 631 F.3d at 95, and we may affirm a dismissal on any ground supported by the record, Fan v. StoneMor Partners LP, 927 F.3d 710, 714 (3d Cir. 2019).

deprived of two rights against excessive detention — a right obligating the police to investigate a detainee's protestations of mistaken identity, and a right obligating them to release the detainee should such investigations undermine the probable cause justifying his or her initial arrest.[4] We separately analyze Rivera's claims as they pertain to each of these two putative rights.

## A.

Section 1983 is not itself a source of individual rights; rather, it provides a remedy for the violation of an individual right grounded in some independent source of federal law. E.g., Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006). Thus, to state a claim under section 1983, a plaintiff must allege that the defendant's conduct caused the deprivation of some right secured by federal law. Id. Rivera claims first that the State Defendants infringed upon her constitutional rights by failing to investigate her protestations of mistaken identity promptly.

In Baker v. McCollan, 443 U.S. 137 (1979), the Supreme Court addressed what rights the Constitution provides to a detainee who protests that he or she was incorrectly detained because of a mistake as to his or her identity. There, the detainee had been mistaken for his brother, and three days elapsed before sheriff's deputies reviewed a

---

[4] Rivera argues only that her continued detention was unlawful, see, e.g., Rivera Br. 1, 12-15; while she notes correctly in a footnote that no evidence in the record establishes the validity of the warrant, as her claims were dismissed prior to discovery, id. at 23 n.2, she does not argue that her allegations establish or raise a plausible inference that CBP officers violated her constitutional rights by arresting her. Consequently, we do not evaluate the lawfulness of that arrest or consider whether a section 1983 claim against the State Defendants could be premised on the unlawfulness of Rivera's prior arrest.

photograph of the wanted suspect and realized that they had detained the wrong individual. Id. at 140-41. Claiming that the deputies had been required to investigate his complaints of mistaken identity more promptly, the detainee brought claims under section 1983. Id. at 143. The Supreme Court held that those claims should be dismissed. Id. at 146-47. Even assuming that "after the lapse of a certain amount of time" continued detention in the face of repeated, uninvestigated claims of innocence could deprive the detainee of his constitutional rights, the Court concluded that "a detention of three days over a New Year's weekend does not and could not amount to such a deprivation." Id. at 145. While the Constitution requires that probable cause exist before an arrest and that a speedy trial be provided after an arrest, the Court reasoned, it does not require officers who execute an arrest pursuant to a valid warrant or who subsequently maintain custody of the detainee to "investigate independently every claim of innocence" or to "perform an error-free investigation of such a claim." Id. at 146.

In our view, the Supreme Court's decision in Baker requires dismissal of the claim that the State Defendants violated Rivera's constitutional rights by failing to investigate her claims of mistaken identity adequately or promptly. Rivera was transferred to the custody of Hudson County on December 20; two days later, on December 22, she raised her complaints of mistaken identity with Priede, who investigated them and concluded that the bench warrant constituted an invalid basis for her continued detention. Rivera was then transferred to Cumberland County custody on December 24; that same day, she raised her complaints of mistaken identity with the Cumberland County Defendants, who responded by fingerprinting her and determining that her fingerprints did not match those

6

associated with the bench warrant. On the similar facts presented in <u>Baker</u>, the Supreme Court held that no constitutional violation occurred when officers detained a suspect for three days before investigating his or her complaints of mistaken identity. Here, the Hudson County Defendants and Cumberland County Defendants waited two days and zero days, respectively, before investigating Rivera's complaints — in each case, a time period less than three days. Therefore, the District Court correctly concluded that Rivera's Second Amended Complaint failed to state a claim for relief under section 1983 premised on a violation of her right to a prompt investigation of her protestations of mistaken identity.

B.

In addition to claiming that the State Defendants should have more promptly investigated her complaints of mistaken identity, Rivera claims that they should have more promptly released her once they realized that her complaints of mistaken identity were in fact correct. The deputies who detained the plaintiff in <u>Baker</u> waited three days to investigate his complaints of mistaken identity, but once they consulted a photograph of the suspect and realized their error they released him on the very same day. While it did clarify officers' constitutional obligations to investigate a detainee's protestations of innocence, then, the <u>Baker</u> Court had no occasion to address what the Constitution requires should such investigations occur and undermine the basis upon which the detainee was initially arrested. Just over twenty years ago, in <u>Wilson v. Russo</u>, 212 F.3d 781 (3d Cir. 2000), we recognized that the law in this area was "not entirely settled," but concluded that in that case we did not "need to decide these difficult issues." <u>Id.</u> at 792.

And we have not decided them since then.  See Toribio v. Spece, 558 F. App'x 227, 231 (3d Cir. 2014) (unpublished opinion) (declining to "settle the unsettled issue"); see also Diaz v. Bullock, 268 F. Supp. 3d 640, 654-55 (D.N.J. 2017).

Rivera's allegations that the State Defendants failed to release her promptly could state a claim for relief under section 1983 only were detaining officers obligated, following a valid arrest, to respond in some way to new information that dissipated the probable cause justifying that arrest.  While her claims could not be sustained absent an answer to this unsettled question of law, however, alternative grounds exist upon which they can be dismissed.  In particular, the State Defendants urge us to affirm the District Court's dismissal based on the doctrine of qualified immunity, which exempts defendants from liability under section 1983 if a federal right was not "clearly established" when the plaintiff was deprived of it.  E.g., Mack v. Yost, 63 F.4th 211, 221 (3d Cir. 2023).  In part because it is often considerably easier, when the law is unsettled, to determine that a right was not clearly established than to make new law by deciding whether such a right exists at all, the Supreme Court has recognized courts' discretion to avoid the latter inquiry by deciding section 1983 claims on the former ground alone.  Pearson v. Callahan, 555 U.S. 223, 236-37 (2009).  Given the complexity of the question left unsettled in Wilson — and given that the parties here have hardly briefed that question comprehensively, or even adequately, see Pearson, 555 U.S. at 239 — we begin by asking whether any right Rivera may have had to prompt release was clearly established at the time it was allegedly infringed.

In determining whether a right was clearly established, courts ask whether "the

8

law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." District of Columbia v. Wesby, 583 U.S. 48, 63 (2018) (quotation marks omitted) (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2001)).  That standard is not met.  If the law is "unsettled" as to whether an officer must seek a detainee's release once new information vitiates the probable cause justifying the detainee's arrest, as we explained in Wilson, a reasonable officer would understand that the lawfulness of failing to do so is unsettled, not that such a failure would be unlawful.  Similarly, a reasonable officer could not glean the requisite clarity from the decisions of the other Courts of Appeals, which have reached no consensus on the question.  Compare Brady v. Dill, 187 F.3d 104, 112-15 (1st Cir. 1999) (holding that no such constitutional right exists) with BeVier v. Hucal, 806 F.2d 123, 128 (7th Cir. 1986) (holding that it does).

Nor does our decision in Schneyder v. Smith, 653 F.3d 313 (3d Cir. 2011), which Rivera discusses in her brief, provide that clarity.  True, there we acknowledged as a general principle that "an individual in custody has a constitutional right to be released from confinement 'after it was or should have been known that the detainee was entitled to release.'"  Id. at 330 (quoting Cannon v. Macon County., 1 F.3d 1558, 1563 (11th Cir. 1993)).  But as the Supreme Court has repeatedly explained, what must be clearly established is that the officer's conduct was unlawful "in the particular circumstances before him," and courts must therefore employ "a high 'degree of specificity'" in defining the conduct alleged to be unlawful.  Wesby, 583 U.S. at 63 (quoting Mullenix v. Luna, 577 U.S. 7, 13 (2015) (per curiam)).  Thus, we may not inquire simply whether the law clearly established that those entitled to release are entitled to release — a

proposition we described as almost tautological in <u>Schneyder</u>.  653 F.3d at 330.  We must ask instead whether any duties that derive from that principle were clearly established for officers in the position of the State Defendants.  And while it may have been clearly established that that principle prohibited the conduct of the defendant in <u>Schneyder,</u> who violated the specific terms of the court order pursuant to which the plaintiff was detained, <u>id.</u> at 316-18, we explained in <u>Wilson</u> that the application of the principle is unsettled in circumstances where officers learn new information vitiating the probable cause that had justified a detainee's arrest.  Consequently, despite the general principle announced in <u>Schneyder</u>, a reasonable officer in the State Defendants' circumstances need not have recognized that failing to secure Rivera's release more promptly was unlawful.  The State Defendants are therefore entitled to qualified immunity from any claim under section 1983 premised on their failure to release Rivera more promptly once they confirmed that she was not the individual for whom the Cumberland County warrant had been issued.

III.

For the foregoing reasons, we will affirm the Order of the District Court.